DOMENGEAUX, Judge.
Plaintiff Sewerage and Water Board of New Orleans, the owner of a fire hydrant situated at the northwest corner of Annette and Humanity Streets in the City of New Orleans has instituted this suit against the defendants Payne I. Oziah and Phoenix Insurance Company, the liability insurer of the vehicle he was driving and Robert L. Green, for damages to its fire hydrant resulting from a collision at the aforementioned intersection on March 22, 1967, at approximately 7:40 a. m., involving vehicles being driven by defendants Oziah and Green. Oziah, driving a 1966 Lincoln sedan owned by his employer Joseph F. Uddo was traveling on Annette Street in a. northeasterly direction towards Lake Pontchartrain and defendant Green was driving his 1960 Pontiac sedan on Humanity Street in a northwesterly direction towards the uptown section of the city. When the two vehicles reached the intersection of Annette and Humanity Streets they collided, the front of the Green vehicle striking the right side of the Oziah vehicle causing the Oziah vehicle' to collide with plaintiff’s fire hydrant resulting in its damage as complained of. There were no eyewitnesses to the accident other than the parties herein.
The investigating officer testified that the Oziah vehicle was struck in the center of the right side towards the rear and that the impact caused the Oziah vehicle to swerve in an arc to its left with the left rear of said vehicle making contact with the fire hydrant. He testified further that the point of impact of the two vehicles was approximately in the center of the intersection and that there were no visible skid marks leading up to the point of impact. Also he testified, without objection, that his estimate of the speed of the Green vehicle was 20 miles per hour and of the Oziah vehicle 15 miles per hour.
The intersection in question was uncontrolled, having no signals or signs and both streets were of 28-foot widths. The designated speed limit in the area was 20 miles per hour.
Oziah testified that he was traveling on the aforementioned Annette Street at 10 to 20 miles per hour; that he slowed his vehicle as he approached the intersection of Humanity Street, almost coming to a complete stop; that he looked to his left and saw nothing coming, then looked to his right and again saw nothing coming although he could see for half a block clearly; that there was a vacant lot on his right with trees and shrubbery on it; that seeing nothing coming he proceeded across the intersection thinking he could cross it safely; and that when he was half way across he was struck by the Green vehicle which he then saw for the first time.
Green on the other hand testified that he was traveling on Humanity Street at some 15 miles per hour as he approached the intersection on Humanity Street, heading in an uptown direction; that he saw a car on Annette Street coming toward the intersection from his left; that there was a vacant lot covered with shrubbery on his left; that suddenly the other car was right in front of him when he was some six feet from the center of the intersection; and that he applied his brakes but could not avoid hitting the Oziah vehicle in the rear right side.
The lower court granted plaintiff judgment against defendant Green but dismissed plaintiff’s suit against defendant Oziah and his insurer Phoenix Insurance Company. Defendant Green has appealed the judgment against him and the plaintiff Sewerage and Water Board of New Orleans has appealed only that portion of the judgment which dismissed its claim against the defendants Oziah and Phoenix, suggesting that judgment should be rendered in its favor not only against Green but also against Oziah and his insurer.
The record shows conclusively that the plaintiff Board is an innocent party in that its fire hydrant was properly *296 and legally situated at its location near the intersection. Such being the case the plaintiff has established a prima facie case. Under such circumstances our jurisprudence is well settled that where an innocent party is damaged as a result of an accident between two automobiles and sues both drivers as solidary defendants, each defendant is deemed guilty of negligence per se and the burden of proof is upon each defendant to exculpate himself from negligence which proximately caused the collision. In effect, in such a case, the burden of proof shifts to each defendant to show that the damage occasioned to plaintiff’s property was not caused as a result of negligence on his part. If either defendant fails to establish his freedom from negligence it must be concluded that he has not overcome the prima facie case made out by plaintiff. Marquez v. Miller, La.App., 64 So.2d 526; Insurance Co. of North America v. Gore, La.App., 106 So.2d 471; Equitable Fire and Marine Ins. Co. v. Allstate Ins. Co., La.App., 137 So.2d 366; Emmco Insurance Co. v. Liberty Mutual Insurance Co., La.App., 138 So.2d 822.
The trial judge stated in his reasons for judgment that he ruled against Green because of his testimony that he (Green) was “ * * * 6 feet before the intersection when he saw Mr. Oziah in the intersection. Mr. Oziah was in front of him in the intersection at that time. Mr. Green testified that he hit Mr. Oziah in the second door of the car. Mr. Green also testified that he did not hit his brakes until the accident happened * * The trial judge gave no reasons for absolving Oziah from any liability.
The trial judge must have concluded that the Oziah vehicle preempted the intersection. Plaintiff-appellant Sewerage and Water Board submits that the trial court erred in (a) finding that there was no negligence on the part of the Oziah vehicle, (b) finding that the Oziah vehicle had preempted the intersection, and (c) in not finding that plaintiff’s damages were sustained as a result of the joint, concurrent negligence of Oziah and Green.
Defendant-appellant Green submits that the trial judge erred in (a) finding that there was no negligence on the part of Oziah, (b) finding that Green was negligent, (c) finding that Oziah had preempted the intersection and, alternatively, (d) in not finding joint and concurrent negligence on the part of both Oziah and Green.
It is well settled by statute and under the jurisprudence that when two vehicles enter an intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right. LSA-R.S. 32:121(B); Traffic Ordinance, City of New Orleans 38:133 (b); Pons v. Vititoe, La.App., 216 So.2d 341. This right of way however is forfeited by the vehicle on the right when the other vehicle preempts the intersection. Generally when a vehicle preempts another at an uncontrolled intersection, it acquires the right of way. However, before a motorist can successfully rely on the doctrine of preemption he must show that he entered the intersection at a proper speed and sufficiently in advance of the vehicle on the intersecting street to permit him to cross without requiring an emergency stop by the other vehicle. The doctrine further contemplates the opportunity, under normal and reasonable circumstances and conditions, of clearing the intersection without obstructing the path of said approaching vehicle. Entry into an intersection at the same time or just a fraction of a second ahead of the other vehicle does not create preemption. Musco v. General Guaranty Insurance Company, La.App., 181 So.2d 881; Scott v. Glazer, La.App., 164 So.2d 185; Glass v. Toye Brothers Yellow Cab Company, La.App., 160 So.2d 329; Bell v. Duplessis, La.App., 150 So.2d 114; Emmco Insurance Co. v. Liberty Mutual Insurance Co., supra; Equitable Fire and Marine Ins. Co. v. Allstate Ins. Co., La. *297 App., 137 So.2d 366; Hatfield v. Bernos, La.App., 182 So.2d 702.
In reviewing the testimony in this case, we can find no manifest error in the trial court’s ruling that defendant Green was guilty of negligence. Although the investigating officer testified without objection that in his opinion the Green vehicle was traveling approximately 20 miles per hour at the time of the collision, the force with which the Oziah vehicle was struck, causing it to be pushed sideways to its left into the fire hydrant, would indicate that the Green vehicle was traveling at a greater rate of speed than that suggested by the investigating officer. In connection with his own approach to the side of the accident Green testified as follows:
“Q. Now, you were proceeding uptown on Humanity, is that correct?
“A. Yes.
“Q. And you were approaching the intersection of Annette and Humanity Streets ?
“A. Yes
“Q. Now, at the time you approached the intersection, to your left, were there any vehicles or anything at— near the intersection that you can remember ?
“A. to my left? Well, yes. There was a vehicle coming from my left.
“Q. Was there any vehicle parked ?
“A. No.
“Q. What is the condition to your left ? Were there any buildings?
“A. No more than shrubbery.
“Q. But it’s a vacant lot?
“A. Yes.
“Q. Now, when you came up to the intersection, did you observe a vehicle coming from your left?
“A. Yes. I did.
“Q. And will you describe what happened?
“A. Well, as I was approaching the intersection, this vehicle was coming down Annette Street. I seen it coming, but I couldn’t slow up enough to stop.
“Q. Where were you — where was the location of your car with reference to the intersection when you first saw this other vehicle?
“A. I would say from the intersection— I would say maybe about six feet.
“Q. From the middle of the intersection?
“A. The middle of the intersection.
“Q. Where was the other vehicle on Annette Street — no—on Annette Street when you were six feet from the middle of the intersection ?
“A. In front of me, right in front.
“Q. Then, that’s when you first noticed it?
“A. No. I seen him coming, but, in other words, I couldn’t slow up enough to keep from hitting him. It happened fast. Just like he said, it happened too fast. He was in front of me just that fast. And I hit my brakes at the time, and he was about halfway across.
“Q. How far was he to your left when you first noticed him?
“A. Well, it’s kind of hard to say because it happened so fast.
“Q. And you struck his vehicle, is that correct ?
“A. Yes.
“Q. Where did you strike his vehicle?
“A. I think most of his damage was to the rear.”
Even interpreting Green’s testimony in the light most favorable to him, any right *298 of way which he may have had by virtue of his position on the right was forfeited by the close sequence of events to which he testified.
Concerning the defendant Oziah, we feel that the trial judge has erred in absolving him from liability even though he may have physically preempted the intersection, his testimony and the physical facts surrounding the accident prevent him from acquiring a sheltered position under the doctrine of preemption. Upon being asked on cross-examination as to the condition of the intersection as he approached it, he stated:
“A. Well, I slowed down and I looked to my left. There wasn’t anything coming to my left. I looked toward the right, and I didn’t see anything too far, you know, too close, and I started across.”
He further testified as follows:
“Q. Were there any vehicles on your right when you got to the intersection, or was the street fairly clear at that time?
“A. It looked clear.
“Q. What about on the sidewalk or out of the intersection? Are there any buildings, or is there a vacant lot ?
“A. They have a lot there with trees in it.
“Q. But there are no buildings ?
“A. No buildings.
“Q. And there’s a number of trees and shrubbery on the right?
“A. Yes.
“Q. Now, when did you first — well, when did you first see the other vehicle, or did you see it before the 1 impact?
“A. Well, it happened so fast, I couldn’t say exactly how far it were before he hit it.
“Q. Then, would it not be correct that actually you did not know of the existence — the presence of the other vehicle until you were struck, is that correct ?
“A. That’s true.
“Q. What was the location of your vehicle when you were struck? When you first became aware that you were struck?
“A. Well, I was more or less halfway across the street, our of the intersection.”
On direct examination he testified as follows:
“Q. Now, when you approached the intersection of Humanity and Annette Street and you looked to your right, did you see any cars as you slowed down?
“A. I don’t think it were.-
“Q. How far down to your right on Humanity Street were you able to see clearly?
“A. I could see a good distance.
“Q. As you approached the intersection, was there anything blocking your view of the street?
“A. Well, they had the shrubbery, those trees and things.
“Q. Would you say you could see a distance of at least a half block?
“A. I could.
“Q. And you did not see any automobiles on the street coming in your direction?
“A. No.
“Q. Did you think it was fully safe for you to cross the intersection?
“A. I did.
*299 “Q. When did you first see Mr. Green’s automobile or realize its presence?
“A. Well, when it had hit the automobile actually when it hit.”
To accept as a fact that Oziah had clear vision for a half block to his right and that no vehicle was approaching, we would have to subscribe to the theory that the Green vehicle traveled 175 feet, one-half of a city block within the inappreciable space of time in which the collision occurred according to the testimony of both Green and Oziah. Although we believe, as aforesaid, that Green was traveling in excess of 20 miles per hour, we cannot supply the presumption of incredible speed which would be necessary to substantiate Oziah’s allegations. It is obvious to us that Oziah’s vision to his right was either partially obstructed by the trees and shrubbery, in which event he was obligated to make certain as far as was reasonably possible that no other vehicle was about to enter the intersection, Emmco Insurance Co. v. Liberty Mutual Insurance Co., supra and the cases cited therein, which he obviously did not do; or that he saw the Green vehicle approaching, misjudged its speed and tried to beat it across; or that he didn’t look to his right at all.
In view of the foregoing, we conclude that both Green and Oziah have failed to exculpate themselves from negligence which proximately caused the accident herein, inflicting the damages to plaintiff’s fire hydrant complained of.
Accordingly, for the reasons assigned, the judgment appealed from is affirmed in part, reversed in part and recast so as to read as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of petitioner, Sewerage and Water Board of New Orleans and against the defendants Phoenix Insurance Company, Payne I. Oziah and Robert L. Green, jointly and in solido, in the full sum of $189.28, with legal interest thereon from date of judicial demand until paid and for all costs as assessed in the lower court. Costs of this appeal to be borne by defendants Phoenix Insurance Company and Payne I. Oziah.
Affirmed in part; reversed in part.