314 So.2d 418 (1975)
Mrs. Howard C. BERGERON et al.
v.
Melvin THOMAS et al.
No. 10172.
Court of Appeal of Louisiana, First Circuit.
May 19, 1975.
Rehearing Denied June 30, 1975.
Writ Refused September 17, 1975.
*419 Charles R. Ryan and A. Deutsche O'Neal, Houma, for plaintiffs-appellants.
Robert B. Bulter, III, Houma, for defendant-appellee Clifford Chauvin.
Maurice P. Mathieu, Houma, for defendants-appellees Dixie Auto Ins. Co., Olympic Ins. Co. and Clifford Chauvin.
Walter I. Lanier, Jr., Thibodaux, for defendant-appellee State Farm Mut. Auto. Ins. Co.
Leon C. Vial, III, Hahnville, for defendant-appellee Melvin Thomas.
Before LOTTINGER and COVINGTON, JJ., and BAILES, Judge Pro Tem.
BAILES, Judge Pro Tem.
On Sunday night, March 30, 1969, at about nine o'clock, Mr. Howard C. Bergeron, accompanied by his wife, one of the plaintiff-appellants herein, was driving his automobile toward Houma on Highway 90, returning to his home after visiting with one of his sons who lived nearby. At the same time Melvin Thomas, an uninsured motorist who had been in Houma attending a ball game and drinking, was driving his automobile in the opposite direction (toward Raceland). About one mile east of Houma, with each vehicle travelling at approximately 50 mph and in close proximity to one another, Melvin Thomas suddenly drove his car into the opposite lane, crashing head-on into the Bergeron automobile. Although the exact time Mr. Bergeron expired is not known, he was pronounced dead in the emergency room of the Terrebonne General Hospital in Houma shortly after the accident.
Within a few minutes after the collision above described, Mr. T. J. Prestenback, Jr., driving the automobile of Clifford P. Chauvin, an inebriated front seat passenger, in the direction of Houma came upon the accident scene. Mr. Prestenback parked the Chauvin vehicle one to two car lengths to the rear of an automobile which *420 belonged to Mr. Larry John Babin. Mr. Prestenback left the Chauvin vehicle and walked closer to the accident scene. Mr. Chauvin then proceeded to drive his automobile. In so doing he drove into the rear of the Babin vehicle, glanced off of it, and then struck the right rear corner of the Bergeron vehicle which was still occupied by Mr. and Mrs. Bergeron, pushing it in an arc of about 120 degrees, a distance of 14 feet. Mr. Chauvin finally stopped his car on the shoulder of the road a short distance to the west where he remained until the state trooper arrived.
This is an action brought by Mrs. Howard C. Bergeron and her three sons to recover damages for her injuries and medical expenses and for the wrongful death of Mr. Bergeron, as well as physical damages to the Bergeron automobile.
Defendants herein include Melvin Thomas, Mr. Bergeron's automobile liability insurer, State Farm Mutual Automobile Insurance Company, Clifford P. Chauvin and his public liability insurers, Dixie Auto Insurance Company and Olympic Insurance Company. The estate of Clifford P. Chauvin was later substituted as a party defendant because of the death of Mr. Chauvin subsequent to the trial hereof.
The trial court found that the death of Howard C. Bergeron resulted from injuries sustained in the collision with the Thomas vehicle and that Mrs. Bergeron's injuries and resulting disability were likewise caused solely by the first accident. The court a quo found that the Bergeron automobile was damaged when struck by the Chauvin vehicle in the amount of $119.39. Judgment was rendered against Chauvin and his insurers for this damage. Also judgment was rendered against Melvin Thomas in favor of all plaintiffs as well as against State Farm Mutual Automobile Insurance Company under the uninsured motorist provisions of the policy it issued to Mr. Bergeron.
The plaintiffs are the only parties who appeal the trial court judgment. We find the evidence supports the factual findings of the trial court and perceiving no manifest error in its judgment we affirm at appellants' cost.
Appellants do not seek an increase in the amount of judgment against Thomas. Their contention, in seeking a reversal of the judgment dismissing their claim for damages for the death of Mr. Bergeron and bodily injuries and medical expenses of Mrs. Bergeron, is that the trial court erred in finding that the negligence of Clifford P. Chauvin in striking the rear of the disabled Bergeron vehicle did not cause, contribute to or aggravate the injuries of Mrs. Bergeron, and did not cause, contribute to or aggravate the injuries which caused the death of Mr. Bergeron. This presents an issue of fact.
One of the first witnesses of the accident to reach the vehicles after the crash was Mr. Larry John Babin. He stated that he was proceeding in the same direction as Mr. Bergeron a short distance to the rear. There was no intervening vehicle. He testified he drove up close to the Bergeron automobile and went to the right front door. This door would not open because it was jammed. He then opened the right rear door and entered the vehicle. He asked Mrs. Bergeron if she was hurt. She stated that her left leg was hurt, and then asked Mr. Babin if her husband was hurt. He replied that her husband was all passenger's injuries and for wrongful right. He noted the the position of both Mr. and Mrs. Bergeron in the front seat. Mr. Babin testified he then left the vehicle to assist in managing the traffic on the highway. While so engaged he observed the Chauvin vehicle strike his car, then strike the Bergeron car and finally stop in the shoulder of the road. He stated he asked Mr. Chauvin to remain there. After this admonition to Mr. Chauvin, Mr. Babin stated he returned to the Bergeron vehicle.
*421 The following quoted testimony picks up at that point:
"Q. And what did you do?
A. I asked Mrs. Bergeron if she was hurt anymore than what she was and she said no. She wanted her purse. She asked me where her purse was. She said it was in the back somewhere and I got her purse.
Q. At that time what was Mrs. Bergeron's position in the car?
A. Generally the same position as it was before after the first impact. I hadn't noticed any definite movement on her part as to positions.
Q. What about Mr. Bergeron?
A. He was about the same thing, same position as he was before. Generally the same.
Q. Could you tell any difference at all?
A. I couldn't.
Q. At this time was Mrs. Bergeron still conscious?
A. Yes sir.
Q. How did she appear to you then?
A. Maybe she might have been a little bit more afraid, but she was generally the same to me. * * *."
Another witness to the crash, Mr. Albert Rogers, testified that he was driving toward Raceland about 150 yards behind the Thomas car when it collided with the Bergeron automobile. He stated he proceeded to the scene and upon arriving determined if he could be of assistance. He observed Mrs. Bergeron seated on the right side of the front seat, but stated he could not recall definitely whether Mr. Bergeron was slumped over the steering wheel or was reclining on the back of the seat. However, he did state that after the Chauvin car struck the Bergeron car he observed that Mrs. Bergeron remained in the same position as prior thereto, but that Mr. Bergeron was slumped over on the seat with his head in Mrs. Bergeron's lap.
Another witness who testified at the trial was Mr. Gary Cherry. He stated he arrived shortly after the accident and observed both Mr. and Mrs. Bergeron in their vehicle. According to his recall of what he observed, he stated that Mrs. Bergeron was seated on the right side of the front seat against the right door, and that Mr. Bergeron was sitting on his side of the car slumped down in the seat with his head on the back of the seat. He testified that after the Chauvin car struck the rear of the Bergeron automobile Mr. and Mrs. Bergeron were slightly changed in position; that Mrs. Bergeron was slumped a little more in the seat.
All three eyewitnesses, Messrs. Babin, Rogers and Cherry, characterized the movement of the Bergeron vehicle when it was struck by the Chauvin car as a "push", and Mr. Rogers stated that when Chauvin hit the Bergeron car he did not spin it, "he pushed the whole car."
Dr. Saul Landry, coroner of Terrebonne Parish, established the specific injuries of Mr. Bergeron by the autopsy he performed, and Dr. Philip Cenac testified to the injuries sustained by Mrs. Bergeron based on his examination and treatment of her.
We will consider first the injury to Mr. Bergeron and the extent to which the second accident either caused, contributed to or aggravated the same.
Dr. Saul Landry testified that based on the autopsy he found Mr. Bergeron's injuries to consist of (1) fractured sternum, (2) fractured 6th, 7th, 8th, 9th and 10th lower right ribs, (3) lacerated pericardial sac, (4) puncture wound of the right ventricle of the heart, (5) bilateral hemothorax, (6) hemoperitoneum, and (7) lacerated liver.
Dr. Landry testified that it was his opinion that the steering column fractured the *422 sternum, and that fractured and broken ends of the sternum cut the pericardial sac and cut the heart and that probably the same blow which fractured the sternum lacerated the liver. In response to the question of whether the wound of the heart, which he described as puncture wound, was the injury that caused death, he stated:
"I would say that that was the thing, the hole in the heart and the heart pumping all the blood out, makes the individual go into shock and then he died. However, the blood was also escaping from the lacerated liver and that contributed also to the shock."
Further, he testified:
"We know the man was involved in one accident and had concurred (sic) some injuries and from the nature of the injuries I feel like the head on (sic) collision probably caused the injuries that resulted in the death, although I subsequently learned that there was another accident which may contributed, but in my opinion, the probabilities are that it did not have much bearing on it."
Dr. Mack Thomas, whose specialty is General and Vascular Surgery, testified in response to hypothetical questions posing the known facts of the two accidents and the injuries to Mr. Bergeron as found by Saul Landry, as follows:
"Q. Doctor you have stated that it would be possible for some of these injuries, do you apply that to all the injuries or some of them, the possibility that is concurred (sic) before the second accident, did you apply that to the fractured sternum, also.
A. I would say that the major portion and this is in all probability, the major portion of the injuries, especially (sic) the fractured sternum, the ribs, the injury to the liver occured (sic) due to the thrusting forward of the chest and the lower portion of the abdomen to the stering (sic) wheel, that is the most common type of injury that is associated with the steering shell (sic) injury, that is associated with these particular findings especially with a head-on collision because the thrust is in a forward direction.
Q. With the facts that you have would you be able to put a per centage of possibilities or probabilities or how ever you want to word it, as to wherther (sic) any of these things occured (sic) in the second accident as opposed to the first accident?
A. I would say that the probability of the injuries occuring (sic) with the, you say there was the imprint of the steering wheel on the chest and Mr. Bergeron was driving, the probability is that the injuries, a great percentage of them occured (sic) in the first accident.
Q. Doctor Thomas, do I understand your testimony correctly, that it is to the effect that after you have reviewed these photographs that shows you some idea of the forces involved, and adding to that information the further facts introduced by Mr. O'Neal, do I understand your testimony correctly that it is your opinion that all of the injuries were probably sustained in the first accident?
A. I am saying what I feel is that the prabability (sic) that the injuries were prabably (sic) sustained in the first accident, basic injuries. The probability, I believe, is fairly high."
Dr. Felix Mathieu, an expert in Thoracic Surgery, in stating his opinion of what injuries Mr. Bergeron received in the first accident and the probable consequences thereof, testified as follows:
"Q. The quetion (sic) was, could you form an opinion as to whether or *423 not that the head-on collision caused the death of Mr. Bergeron?
A. Well having seen this picture and knowing the autopsy report and being familiar with the forces involved in this accident, which is a deceleration type instance (sic), I would say that the probabilities are extremely high that all the man's injuries were caused by the first collision.
Q. Well, do you think his death was caused by the first accident?
A. I would say the probabilities are very high, that the first collision caused the man's death.
Q. Do you think that the second accident contributed to his death?
A. I don't think so because the injuries that are stated in the autopsy report are massive injuries which require a rather massive force and I don't see where there was such force in the second collision to cause thoes (sic) severe injuries.
Q. But you haven't stated as to whether the blow which caused the fractured sternum also caused the puncture wound of the right ventrical (sic) of the heart?
A. That assumption would be very likely, that the same blow that caused the fractured sternum caused the puncture wound of the heart.
Q. You spoke of deceleration, would you tell us what you meant by that?
A. Well, when the body is brought to a sudden stop, especially when the victim is in the drivers seat, the chest is struck by the steering wheel and therefore you have a tremendous force directly against the chest wall when the body is brought forward and these are the usual type injuries that are caused in this type of head-on collison (sic). These are fairly typical of the type of injury."
The opinion of Dr. Robert Carter, whose speciality is General Thoracic Surgery, when questioned hypothetically about the probable consequences of the first accident and the known injuries of Mr. Bergeron, was expressed in the following testimony"
"Q. Could you form an opinion as to whether or not the first collision caused the death of Mr. Bergeron?
A. Well, it would certainly appear that the injuries described by the coroner are that of a steering wheel injury and that all of the injured dissues (sic) would be in the area where he would strike a steering wheel. I would say that all the injuries that was noted resulted from a compression of the body against the steering wheel and that the lacerated liver, puncture wound of the heart, the bleeding in both chests, bleeding in peritoneum cavity, I feel that would result in the first accident.
Q. Do you think that the second collision contribbuted (sic) to his death?
A. I feel like the injuries that he sustained in the first accident were certainly all resulted from the first accident and that the man did die as a result of the first accident and I do not and I can not conceive how the second accident could have caused the damage that you described to me.
Q. Could you form an opinion as to whether the blow that broke the sternum was the same blow that caused the puncture wound of the heart?
A. Yes, the heart in a steering wheel accident is injuried in two ways, one, it can be punctured by broken ribs and the rib being thrust right *424 into the side of the heart or probably more commonly that the heart is compressed between the sternum and the pretibial column and that it is severely contused, mashed and a whole (sic) is torn by compression between the two boney structures and I feel that the whole (sic) in the heart probably resulted from the compression between the sternum and the pretibial column."
Although the plaintiffs rely heavily upon the testimony of Dr. Philip Cenac, we do not find any gross difference between his testimony and that of the other experts who testified. We find this to be shown by the following quoted testimony of Dr. Cenac:
"Q. Would you be in a position to say whether or not the second accident aggravated the injuries of Mr. Bergeron and to what degree or what the probabilities are?
A. I have already stated to you that I thought that you could not state with absolute certainty what accident one caused or what accident two caused unless you had the opportunity to see the patient between the two accidents. I also stated to you that I thought with the injuries you mentioned that it is entirely possible with moving the patient to aggravate something that was already there."
Next we consider the injuries of Mrs. Bergeron, and the evidence which is relied on by her to demonstrate that these injuries were caused, contributed to or aggravated by the second accident.
Dr. Cenac, Mrs. Bergeron's attending physician who first saw her immediately after she was brought to the hospital from the accident site, found her suffering from (1) broken right 7th and 8th ribs, (2) fracture, simple comminuted extensive femur distal third left extending into the left knee joint, (3) laceration massive approximately six inches in the right pre-patella or kneecap area, (4) laceration small one inch right pretibial area midway between right knee and right ankle, (5) massive ecchymosis of the anterior chest wall primarily in the breast area; (6) ecchymosis or (bruising) massive both elbows and arms, and (7) fracture, simple, radial styloid, right. Also she had small slivers of glass in her right foot.
We find it would serve little purpose to quote in detail the testimony of the various doctors who testified relative to cause, contribution or aggravation of Mrs. Bergeron's injury by the second accident. Other than the broken ribs, massive laceration in the kneecap area, the massive bruising of the anterior chest wall and the extended period of draining of the hematoma of her breast, the most serious injury was the simple comminuted fracture of the femur extending into the left knee joint. The medical experts agree that her injuries were caused by the first accident. There is testimony (expert) that the second accident may possibly have contributed to her injuries or possibly have aggravated her injuries, however there is no evidence to show, if in fact there was aggravation, to what extent this occurred.
Dr. Richard Landry, an orthopedic surgeon, testified as follows:
"Q. I am going to hand Dr. Landry the report of Dr. Cenac which has been received into evidence, marked Plaintiff6, which in the second paragraph described the various injuries I have described except for the cuts on the face and head.
A. Well, to take the injuries one by one, the most serious of course, is a rather extensive fracture of the left femoral shaft with a distantal component (sic) that went into the knee joint. In my mind there is no question whatsoever that this fracture was caused by the head on collision. I think that the amount *425 of violence necessary to produce this fracture would be associated with soft tissue damage which can only be explained by the first accident. The fracture of the ribs I feel also were most adequately explained by the first collision. I feel a large blunt injury to the breast was caused by the first accident. Fractured radial styloid I feel was also caused by the first accident. The lacerations about the knee were undoubtedly caused by the first accident also.
Q. What about the cuts about the face and head?
A. I think it is described as glass particles within the lacerations on the face and these were also caused by the first accident."
It cannot escape our attention that the record shows that the Chauvin vehicle first struck the Babin vehicle, then glanced off and struck the Bergeron vehicle, turning or pushing it in an arc of about 120 degrees toward the east or in the direction of Raceland. The photograph of the rear of the Bergeron vehicle shows slight damage to the rear trunk deck. Though the slightness of the damage is not conclusive of injury the impact could have inflicted, having taken into consideration the testimony of the named witnesses who observed the positions of Mr. and Mrs. Bergeron after the second accident, the evidence preponderates in favor of our finding of a slight impact between the vehicles. The conclusion is further fortified by the findings of the doctors that all injuries were of the type compatible with a head-on collision.
From our viewing of the photographs in evidence it is obvious that the Thomas and Bergeron vehicles collided with great impact, and that this accounts for the numerous injuries to the anterior portions of both Mr. and Mrs. Bergerons' bodies. It is equally obvious that when the two vehicles stopped on impact that the persons within tended to move forward until restrained by the physical objects in front of them, namely, the steering column for Mr. Bergeron and the windshield and dash for Mrs. Bergeron.
Conversely, when the disabled stopped Bergeron vehicle was subsequently struck and pushed forward a distance of about 14 feet, Mr. and Mrs. Bergeron tended to resist movement and if moved at all, independent of their vehicle, their movement would have been to the rear or toward the back of the seat on which they sat.
From the record before us, it is clear that the plaintiffs have not shown, as exemplified by the testimony of the witnesses, by a preponderance of the evidence that the second accident either caused, contributed to or aggravated the injuries sustained by either Mr. Bergeron from which he died, or Mrs. Bergeron.
The most favorable finding from the plaintiffs' proof of causation, contribution or aggravation through the occurrence of the second accident is that it is possible for such to have happened, as opposed by the rebuttal evidence that in all probability or more probably all injuries were incurred in the first accident.
Messrs. Babin, Rogers and Cherry observed the Bergerons in their car following the first accident. These witnesses testified that Mr. and Mrs. Bergeron were in virtually these same positions after the second accident. Mr. Babin was physically within the confines of the Bergeron vehicle on both occasions.
The plaintiffs have not sustained their burden of proving that the second accident either caused, contributed to or aggravated the injuries or death for which they sue herein.
The plaintiffs quote from Prosser on Torts, page 226 (2nd Ed.) the following:
"Where two or more causes combine to produce such a single result, incapable of *426 any logical division, each may be a substantial factor in bringing about the loss, and if so each may be charged with all of it . . . . Entire liability rests upon the obvious fact that each has contributed to the single result, and that no rational division can be made."
They argue that the law of this State follows the passage quoted above and that where multiple parties produced injuries which are inseparable as to cause, both parties are liable jointly and in solido.
We do not have before us a factual situation which requires us to pass upon the correctness of this principle of law. It is not applicable to the facts of the instant case. The mechanics of the two accidents are such as to make a distinction between the causation of the injuries sustained.
Further plaintiffs argue the application of the holding in Hilburn v. Johnson, 240 So.2d 767 (La.App. 2nd Cir. 1970). In this cited case, a motorcyclist struck the rear of a vehicle which entered the highway in front of him, and as a result thereof the motorcycle rider was thrown to the road surface. While lying on the highway, the Johnson vehicle struck the motorcycle and rider and dragged both down the highway a distance of 132 feet and the car came to rest on top of the cyclist. This cited case is clearly distinguished from the instant case on the facts. The facts are too dissimilar to apply the holding of the Hilburn case to the instant case.
Finally, plaintiffs cited and argued the applicability of the statement of law (cited from 100 ALR2d 61) that where a plaintiff has established by sufficient evidence that the independent wrongful acts of two or more persons have concurred in producing an injury or damage, the law then imposes on each of several tortfeasors the burden of proving his own innocence or his own limited liability. This statement is not applicable for the reason that there is insufficient showing of injury through the second accident to shift the burden of proof of freedom from liability to defendants.
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed at appellants' cost.
Affirmed.
COVINGTON, Judge (dissenting):
It is my belief that the ratio decidendi which relieves Chauvin and his insurers, Dixie Auto Insurance Company and Olympic Insurance Company of liability herein is erroneous.
As stated in the majority opinion, the three-vehicle collision occurred about 9:00 P.M. on Sunday, March 30, 1969, on U.S. Highway 90, near Houma, Louisiana. The highway at the point of the accident was straight, the road was dry, and the night was clear. Howard C. Bergeron, with his wife as a passenger, was driving his automobile in a westerly direction toward Houma. At a point about one mile east of Houma, a vehicle driven by Melvin Thomas, an uninsured motorist, traveling in an easterly direction toward Raceland, crossed the center-line of the highway and collided head-on with the Bergerons.
A short time later, an automobile owned by Clifford Chauvin, an inebriated passenger therein, and driven by T. J. Prestenback, arrived at the scene. Prestenback got out to assist the persons involved in the Thomas-Bergeron collision, leaving Chauvin in his car. Chauvin, moments later, moved into the driver's seat and drove his car toward the scene of the aforesaid wreck. He glanced off a vehicle belonging to one Larry J. Babin, who had also stopped at the scene, and then hit the right rear of the Bergeron car, still occupied by them, spinning it partially around and moving it some fourteen feet down the road. This second collision occurred before aid could be rendered to any of the persons involved in the first collision and before the damaged vehicles could be removed.
*427 Although the Bergerons were seen briefly by would-be rescuers, there were no witnesses who could testify as to the exact nature of their injuries between the first and second collisions.
Suit was filed by Mrs. Bergeron, the widow of the deceased, and by Donald Ray Bergeron, Jerry W. Bergeron and Gilbert Lee Bergeron, the major children of the deceased. The defendants are Melvin Thomas, the driver of the uninsured automobile involved in the first collision; Clifford P. Chauvin, the driver of the automobile involved in the second collision; Dixie Auto Insurance Company and Olympic Insurance Company, the liability insurers of Chauvin; and State Farm Mutual Insurance Company, the uninsured motorist insurer of Bergeron. Chauvin died after the trial of causes not related to this lawsuit and his testamentary executrix was substituted on behalf of his estate as a party defendant.
Following the trial, judgment was rendered. Then a motion for a new trial filed on behalf of the plaintiffs was considered by the trial court, and the original judgment was amended to grant judgment in favor of the plaintiffs and against Melvin Thomas, awarding Mrs. Bergeron for her own injuries and special damages the sum of $59,102.66. Additionally, Mrs. Bergeron was awarded the sum of $70,000.00 for the death of her husband. Each of the three children was awarded the sum of $11,174.00. Judgment was also awarded against State Farm Mutual Insurance Company in favor of Mrs. Bergeron for the sum of $4,500.00, of which $3,000.00 was for her own injuries and $1,500.00 for the death of her husband. Each child was awarded $500.00. These sums used up the allowable amount under the uninsured motorist provision of the State Farm policy. The trial court in effect rendered judgment against the plaintiffs on their main demand against Chauvin and his insurers, only granting judgment against these parties in the amount of $119.38 for property damage to the Bergeron vehicle. Plaintiffs have devolutively appealed this judgment.
Chauvin operated his vehicle in complete disregard of the safety of others. See McAllister v. Travelers Insurance Company, 121 So.2d 283 (La.App., 1st Cir., 1960) wherein the Court stated, at page 285:
"It is the settled jurisprudence of this state that the intoxication of a motorist who collides with a stationary object while driving under the influence of alcoholic beverages, constitutes a proximate cause of such an accident where, in the light of all the facts and circumstances surrounding the incident, it may reasonably be inferred that the accident would not have occurred except for such intoxication and that the intoxication was one of the contributing factors of the accident."
The evidence shows that Chauvin's intoxication was a proximate cause of the accident inasmuch as it appears with reasonable certainty that Chauvin's intoxication resulted in his loss of control of his automobile to the extent that he ran into one stopped vehicle, glanced off that vehicle and collided with the stationary Bergeron automobile. Therefore, the second collision was caused by the negligence of Clifford Chauvin.
The appellants contend that the trial court erred in finding that the negligence of Clifford Chauvin did not cause, contribute to, or aggravate the injuries sustained by Mrs. Bergeron and the injuries which caused the death of Howard Bergeron. This writer agrees with appellants' contention.
Unquestionably Thomas was negligent in causing the first collision and Chauvin was negligent in causing the second collision. The question is whether the injuries to the Bergerons were caused by the sole negligence of Thomas, by the sole negligence of Chauvin, or the combined negligence of both tortfeasors.
*428 Of course, the fellow members of the panel based the affirmation of the lower court on the focal point of causationthat, although Chauvin was obviously a wrongdoer, there is no proof that his actions produced any damage to the Bergerons.
It is appalling to exonerate Chauvin, a palpable tortfeasor. His two innocent victims (one of whom died within a matter of minutes following the two wrecks) obviously could not prove with exactitude which injuries were caused by whom.
It is very likely that the Bergerons were semiconscious, or perhaps unconscious, after the first wreck. Under such circumstances, neither victim would be able to tell with any reasonable degree of certainty which of the two impacts inflicted which of the particular multiple and grievous injuries.
Is it realistic to require that the survivors of Bergeron, an innocent person killed as a result of being hit within seconds or minutes by two automobiles, must be able to prove that the impact caused by vehicle A broke his sternum, three ribs, lacerated his pericardial sac, caused a bilateral hemothorax, and a lacerated liver, while the collision created by the equally unquestioned fault of the driver of vehicle B resulted in two broken ribs, a puncture wound of the right ventricle of his heart, and hemoperitoneum? Is it similarly realistic to pronounce that his wife, who ultimately and fortuitously survived such a horrifying nightmare, should have to prove that the impact with vehicle A resulted in her suffering a comminuted fracture of the left femur extending into the knee joint, a fractured rib, massive ecchymosis of the anterior chest wall and a broken right wrist, while the impact with vehicle B resulted in another fractured rib, laceration of the right leg, facial lacerations, and other injuries?
Who among us could do that? I submit that the answer to that query is: none unless, among other things, we were conscious, medical experts competent to make such diagnoses, and, in such an environment, miraculously well-oriented beyond the capabilities of any mortal known to this writer.
In situations of this kind, the "single, indivisible injury" rule should be applied, allowing a joint and several recovery against the independently acting tortfeasors, Thomas and Chauvin. That rule is set forth in the case of Ruud v. Grimm, 252 Iowa 1266, 110 N.W.2d 321, wherein the Supreme Court of Iowa declared the principle that:
(Where) "... two or more persons acting independently are guilty of consecutive acts of negligence closely related in point of time, and cause damage to another under circumstances where the damage is indivisible, i. e., it is not reasonably possible to make a division of the damage caused by the separate acts of negligence, and negligent actors are jointly and severally liable."
When an innocent third party is injured as a result of a collision between two automobiles, each defendant is deemed guilty of negligence per se and the burden of proof is on each to exculpate himself from negligence proximately causing injury to the third party.
In Sewerage and Water Board of New Orleans v. Phoenix Insurance Co., 230 So. 2d 293 (La.App., 4th Cir., 1970), the plaintiff sustained property damage to a fire hydrant in the amount of $189.28. Two vehicles, one of which was covered by liability insurance, had collided, but only one of them hit the hydrant. Nevertheless, the court properly awarded the plaintiff a judgment against both of the drivers and the insurer.
In Louisiana Power & Light Co. v. Doussan, Inc., 235 So.2d 122 (La.App., 4th Cir., 1970), both negligent drivers in a two-car collision were held liable in solido to the plaintiff for $146.85 property damage *429 to a fence, even though only one of the vehicles hit the fence.
In those cases, recovery was had, even against the non-contact wrongdoers, for relatively small damages to inanimate objects, said damages being miniscule, when compared with the personal injuries sustained in the instant case.
The majority denies recovery against Chauvin and his insurer in a contact case, where damage was done to innocent animate victims. I suffer from various maladies, but misoneism is not one of them. If our jurisprudential legal theories support this doctrine, and thereunder it is proper to have more concerned compassion for minute property losses than for catastrophic personal injuries, then perhaps the propitious moment has arrived for a reexamination thereof.
It is more equitable, as a matter of policy, to allow innocent third parties to recover the entire amount of damages jointly and severally from independent tortfeasors, one of whom may have to pay a disproportionate share of the whole, than it is to allow said tortfeasor(s) to avoid liability entirely, simply because plaintiffs cannot carry the impossible burden of proving the respective shares of causation, or because the tortfeasors have not committed a joint tort.
Authorities for the adoption of such well-reasoned rule include: Copley v. Putter, 93 Cal.App.2d 453, 207 P.2d 876; Murphy v. Taxicabs of Louisville, Inc., 330 S. W.2d 395 (Ky.1959); Maddux v. Donaldson, 362 Mich. 429, 108 N.W.2d 33; Mason v. Reynolds, 135 Neb. 773, 284 N.W. 257; Holtz v. Holder, 101 Ariz. 247, 418 P.2d 584 (1966); Prosser, Torts (3rd ed. 1964) 250; Restatement (Second), Torts § 433 (A)(i) (1965); 65 C.J.S. Negligence § 102.
Not only do my esteemed brethren discount any connection between the patently negligent act of Chauvin and the calamitous injuries sustained by the Bergerons; they also reject the probability that his actions even aggravated any prior injuries inflicted by the gross negligence of Thomas, thereby imputing to the latter the dubious distinction of being the sole cause of Bergeron's death and his wife's injuries. I submit that the negligent acts of Chauvin are so inextricably interwoven with the previous negligent acts of Thomas that Chauvin's negligence cannot be dissociated from them and the resultant injuries to the Bergerons.
The second impact was no gentle thump the testimony of the witnesses Gary Cherry, Albert Rogers and Larry Babin, as well as that of the policeman, Trooper Bourg, is to the contrary. Cherry described it as "a pretty hard blow." When a stopped automobile, on a dry hard-surfaced highway, is spun partially around and knocked fourteen or more feet, leaving a gouge mark in the road, it is vexatiously incomprehensible to me that the "single, indivisible injury" doctrine should not be applied, holding that both collisions contributed to or combined to cause the injuries, thereby entitling the victims to a joint and several recovery from either or both of the negligent drivers for all of the damages sustained.
Our jurisprudence is replete with cases holding that a wrongdoer takes his victim as he finds him; Taylor v. Rome, 303 So. 2d 844 (La.App., 1st Cir., 1974) is an example thereof. The physical evidence and the medical testimony abundantly prove that the impact of Chauvin's vehicle hit the Bergerons with such force as to aggravate the preexisting injuries which they received when hit by Thomas. This is evident even though the medical evidence indicated that certain types of the injuries which they sustained were more consistent with head-on collisions than with rear-end collisions.
Dr. Philip Cenac testified that if Mr. Bergeron was violently moved around after *430 receiving the injuries, "I am sure it aggravated his injuries." Of course, he also realistically pointed out that no one could say "... with absolute certainty what accident one caused or what accident two caused unless you had the opportunity to see the patients between the two accidents." Dr. Mack Thomas concurred in this viewpoint.
Dr. Cenac treated Mrs. Bergeron, who had broken bones and other distressful injuries. He and Dr. Thomas again related how injuries of such a nature would probably be aggravated by violent movement the medical experts called by the defense did not dispute this opinion. While we rely principally upon medical testimony, all of us are acutely aware that most reputable physicians are unwilling to state a categorical, definitive, and unqualified conclusion, commendably acknowledging that medicine is not an exact science; however, a layman should understand that, with all those broken bones, another, although lesser violent, impact will minimally result in additional soft tissue damage. Nonetheless, the majority is unexplicably unwilling to acknowledge that any personal injuries were inflicted by Chauvin. To grossly understate the matter, that second impact was not at all beneficial to the well-being of the Bergerons.
I submit that there is ample reliable evidence to find that Chauvin may well have administered the coup de grace to Bergeronadmittedly, that is subject to debate; however, the holding of the majority, completely exonerating him from any causation whatsoever, results in a lamentable denial of the plaintiffs' right of recovery under the very first sentence of LSA-C.C. Art. 2315[1], our general and basic principle of delictual liability.
Therefore, I respectfully dissent.
NOTES
[1] "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."