GUIDRY, Judge.
In this suit plaintiff seeks the recovery of damages, both general and special, for injuries sustained when he fell down a stairway in a building owned by the defendant, Wallace P. Denux. Lumbermen’s Mutual Casualty Company is the liability insurer of Mr. Denux.
At trial on the merits defendants admitted liability and coverage under Lumbermen’s policy, the only issue submitted for *1111 decision by the trial court being that of quantum. The district judge, without as-' signing written reasons, rendered judgment in favor of plaintiff in the principal sum of $5917.00, i. e., $3000.00 for general damages and $2917.00 in special damages.
The amount of judgment, plus interest and all costs, was paid by the defendants to plaintiff whereupon the latter executed a written document evidencing payment reserving, however, his right to appeal. Plaintiff has perfected this appeal requesting an increase in the award. Defendants have not appealed or answered the appeal of plaintiff.
At the time of accident plaintiff was twenty-two years of age. He was employed as a deck hand by Bruce Boat Rentals Inc. and worked offshore, 7 days on and 7 days off. As a result of his fall down the stairs of defendant Denux’s apartment building he sustained a fracture of the base of the fourth metacarpal of the right hand and a dislocation of the fifth carpal metacarpal joint of the right hand. He was seen on the night of the accident by Dr. Louis A. Cayer, an orthopaedic surgeon of Alexandria, Louisiana. Two days post-accident Dr. Cayer performed an open reduction of the dislocation of the fifth carpal metacarpal joint and a pinning with “K” wires of the carpal metacarpal joint. Plaintiffs right hand was then placed in a cast. This procedure was accomplished with the use of a local anesthetic plaintiff being released to return to his home the same day. Plaintiff was thereafter seen by Dr. Cayer as an outpatient on several occasions he being finally discharged by the Doctor on June 27, 1975. Dr. Cayer did not testify at trial however, his medical records were admitted in evidence pursuant to stipulation of counsel. The following excerpt taken from Dr. Cayer’s report of June 27, 1975 (P-3) indicates that Doctor’s opinion regarding plaintiff’s recovery and ability to work:
“ . . .A 320 deg. reading as he had on the right side is certainly compatible with an excellently functioning hand and I would think he is honest when he says he has not had pain. He wants to return to full work duty and I told him I certainly think he can do this, that I thought he should have a trial of performing his previous employment or full work duty. Work Status: Discharged today without any physical impairment as I do not feel any is indicated. There is no evidence to suggest subluxation or dislocation of the joint involved and the hand certainly appears well healed.”
The only other medical evidence in the record is the deposition of Dr. Paul M. Davis, an Orthopaedic surgeon, who examined plaintiff on March 18,1976. Dr. Davis opined that plaintiff had had an excellent recovery from his injury with only a 5% overall impairment of the right hand. With regard to the overall impairment assigned, i. e., 5%, Dr. Davis stated that such percentage was a low as he would rate one and such impairment would lessen further in time.
Equally, if not more important, is plaintiff’s own candid testimony regarding his complete recovery and his ability to work as before his injury. Plaintiff testified as follows (Transcript, page 29):
“Q. Do you have any trouble with your work now because of your hand condition?
A. No Sir.
Q. You can do your work?
A. Yes sir.
Q. Mr. Distefano, since you have returned to your employment, may I ask you this? Did you go back to work with the same people?
A. Yes sir.
Q. Are you doing essentially the same job?
A. Yes sir.
Q. Is there anything that you’re doing in your work now that bothers you because of your hand, such as the grasping of ropes or hanging on to anything?
A. Well, I really — nothing so far has bothered me. . . . ”
As heretofore mentioned the district judge awarded plaintiff $3000.00 in general *1112 damages and $2917.00 in special damages, the latter amount including $567.00 medical expenses and $2350.00 in lost wages. There is no dispute as to the amount awarded for medical expenses, however, plaintiff suggests that the award in general damages should be increased to $5000.00 and the award for lost wages should be increased to $4432.12.
SPECIAL DAMAGE AWARD FOR LOST WAGES
The record reflects that plaintiff was earning, at the time of injury, gross wages in the amount of $28.00 per day plus a daily food and linen allowance of $6.00. As aforesaid he worked 7 days on and 7 days off. From the time of injury to the date of his discharge by Dr. Cayer to return to full employment he lost 11 work weeks. If plaintiff’s wages be calculated at $28.00 per day his lost wages would amount to $2156.00. On the other hand if there be included in his daily wage rate the amount allowed for food and linen, his lost wages would amount to the sum of $2618.00. The district court allowed plaintiff the sum of $2350.00. We are not prepared to hold that in fixing plaintiff’s loss for this item at the latter amount the trial court committed manifest error. Allowances for loss of wages, like those for loss of future earnings or support of dependents in case of death, are not generally susceptible of calculation with mathematical exactitude. They are in some measure speculative when the circumstance of work lay-offs, occasioned by reason of sickness, inclement weather, labor disputes etc. are balanced against the record of one who was previously regularly employed. As reiterated by our Supreme Court in Viator v. Gilbert, 253 La. 81, 216 So.2d 821, 823 (1968), “. . . most that the courts can do . . . is to exercise a sound judicial discretion and award such amount as, all the circumstances considered, may seem just to both litigants and not unduly oppressive to either.”
Although the record does contain some evidence that plaintiff did work part-time during his off weeks the evidence in this regard is inconclusive as to the amount or frequency of such earnings. In any event, plaintiff does not in brief seriously contend that the award as made by the trial court is in error for not considering such additional earnings.
Suffice it to say that we discern no abuse of the great discretion reposed in the trial court in assessing this type of damage claim. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971); Reeves v. Louisiana & Arkansas Railway Co., 304 So.2d 370 (La.App. 1st Cir. 1974), writ refused, La., 305 So.2d 123.
GENERAL DAMAGE AWARD
The rule of appellate review as it applies to awards of general damages was rather recently set forth in the case of Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974) as follows:
“The appellate review of awards for general damages is limited to determining whether the trial court abused its great discretion. The adequacy or inadequacy of an award should be determined on the basis of the facts and circumstances peculiar to the case under review, having in regard also that the trier of fact has the advantage of seeing the witnesses and evaluating their testimony, including that of residual pain. The awards made in other cases provide no scale of uniformity; their use is limited to serving as an aid to determine, if the present award is greatly disproportionate to similar awards (if truly similar), whether an issue of abuse of discretion may exist in the present case. In any event, an abuse of trial-court discretion must be clearly demonstrated by the record before an appellate court will tamper with an award of general damages.”
We have considered the award made in this case in light of this well established rule and fail to find any abuse of the much discretion vested in the trier of fact. R.C.C. Article 1934; Bitoun v. Landry et al., 302 So.2d 278 (La.1974).
*1113 For the above and foregoing reasons the judgment appealed from is affirmed, appellant to pay all costs of this appeal.
AFFIRMED.