351 So.2d 290 (1977)
Donald L. MOSS et al., Plaintiffs and Appellants,
v.
TRAVELERS INDEMNITY COMPANY, Defendant and Appellee.
No. 6135.
Court of Appeal of Louisiana, Third Circuit.
October 17, 1977.
Rehearing Denied November 10, 1977.
Writ Refused January 11, 1978.
*291 E. C. Hamilton, Henry R. Liles, Lake Charles, for plaintiffs and appellants.
Woodley & Fenet by Edmund E. Woodley, Lake Charles, for defendant and appellee.
Before HOOD, CULPEPPER and GUIDRY, JJ.
CULPEPPER, Judge.
This is a suit for damages arising from an intersectional collision between two automobiles in the City of Lake Charles. The plaintiff, Donald L. Moss, was driving one vehicle with the plaintiff, Glenda A. Dalmage, as a passenger. The other vehicle was being driven by Joanie Tamney and was insured by the defendant, Travelers Indemnity Company. The plaintiff, Emery P. Higginbotham was the owner of the vehicle driven by Moss. After a trial on the merits, judgment was rendered in favor of the defendant insurer dismissing the plaintiffs' suit at their costs. From this decision, plaintiffs now appeal.
The substantial issues on appeal are: (1) Was Donald Moss negligent, and was this negligence a legal cause of the accident? (2) Was Joanie Tamney's negligence in driving at an excessive speed a legal cause of the accident?
The accident occurred on April 25,1976 at approximately 1:30 a. m. It had been raining earlier that night and was misting at the time of the accident. The streets were wet. The collision took place at the intersection of Enterprise Boulevard, a four-lane street running north and south with a median down the middle, and Eighteenth Street, a two-lane street crossing Enterprise Boulevard at right angles. Enterprise Boulevard has the right of way. Stop signs required traffic on Eighteenth Street to stop and yield to traffic on Enterprise. Both streets were straight and level at this point and there were no obstructions to the vision of persons approaching the intersection.
Moss was driving east on Eighteenth Street, with both his headlights and windshield wipers in operation. He stopped at the stop sign on Enterprise and looked north (to his left) for any approaching traffic. He observed none. He asked his sister, Glenda Dalmage, to look to her right for traffic heading north on Enterprise. Mr. Moss then proceeded to cross the intersection. The front of his vehicle had reached the median, and the rear was in the inside southbound land of Enterprise Boulevard when the Tamney car, which was going south on Enterprise, struck the left rear of the Moss vehicle. After the impact, the Moss vehicle crossed the boulevard and came to rest at the southeast corner of the intersection about 84 feet from the point of impact. The Tamney vehicle continued southward 150 feet from point of impact and came to rest headed west in the southbound lanes of Enterprise.
Miss Tamney and her passenger, Judith Bourgeois, testified that they were proceeding south on Enterprise 45 to 50 miles per hour, when suddenly the Moss vehicle appeared in front of them. Miss Bourgeois said they were within 25 to 30 feet, and Miss Tamney said only 15 feet, of the Moss *292 vehicle when it moved into the intersection. Miss Tamney could not remember swerving her car to avoid a collision, nor could she remember applying the brakes. She testified that there was no time to take evasive action. She did not remember seeing the lights of the other car nor the car itself until it moved into the intersection. She testified that prior to the collision she had been driving in the right or outside lane of Enterprise Boulevard.
Testimony was also given by several police officers. Officer Hancel Hedrick, a patrolman for the Lake Charles City Police, testified that as he was leaving work the evening of this accident he was partially run off the road by a speeding yellow automobile (the one driven by Miss Tamney) which approached from the rear going down the center of the two lanes of Enterprise Boulevard. He immediately gave pursuit. His testimony was that in spite of reaching speeds between 70 and 75 miles per hour in his pickup, he was not able to catch the car which had speeded past him. At several points, Enterprise Boulevard has dips in it and the officer claimed he saw the car bounce and sparks fly from underneath it. He was forced to stop and then run a red light at one intersection, but reached the accident scene (about six blocks farther south) only moments after impact. The posted speed limit for Enterprise Boulevard was 35 miles per hour.
As a result of the collision, the automobile Mr. Moss was driving was declared a total loss. Heavy damage was also done to the car driven by Joanie Tamney. The four persons involved in the accident were taken to a hospital emergency room where they were treated and released. No one received serious injuries. Investigating officers issued Miss Tamney a traffic ticket for going 70 in a 35 mile per hour zone. She subsequently pleaded guilty to going 50 in a 35 mile per hour zone. No explanation was given for the reduction of the charge.
Plaintiffs contend the Moss vehicle had pre-empted the intersection, and that the accident was caused solely by the excessive speed of Joanie Tamney. Defendant, Travelers Indemnity Company, denied any liability on the part of its insured and alleged the negligence of Donald Moss in failing to yield the right of way was the sole legal cause of the accident.
The trial court found that Joanie Tamney was going 50 miles per hour, and that she was thus negligent in exceeding the speed limit by 15 miles per hour. However, the trial court concluded her speed was not a cause in fact of the accident.
The court found that Moss was negligent in failing to yield the right of way, and that this was the sole cause of the accident. The trial judge relied on Funderburk, et al. v. Temple, et al., 268 So.2d 289 (La.App. 1st Cir. 1972) and Shepherd v. Checker Cab Company, 230 So.2d 343 (La.App. 4th Cir. 1970) for the rule that "the driver on the inferior street is charged with the duty of maintaining a proper lookout, and is held to have seen that which he should have seen by the exercise of reasonable care." He also concluded Moss is not exonerated by the rule of pre-emption, since he did not enter the intersection at a time when it was reasonably safe to do so.
On appeal, counsel for appellants relies principally on the rule that a statutory right of way given to a motorist when entering an intersection is forfeited if that motorist is traveling at a highly excessive speed under prevailing circumstances. Gauthier v. Fogleman, 50 So.2d 321 (La. App. 1st Cir. 1951); Grouchy v. Globe Furniture Company, Ltd., 16 La.App. 311, 134 So. 347 (1st Cir. 1931); Neal v. Davenport, 270 So.2d 617 (La.App. 2d Cir. 1972); State Farm Mutual Automobile Insurance Company v. United States Fidelity & Guaranty Company, 111 So.2d 175 (La.App. 2d Cir. 1959); Sewerage and Water Board of New Orleans v. Phoenix Insurance Company, 230 So.2d 293 (La.App. 4th Cir. 1970).
The facts in Gauthier v. Fogleman, supra, are very similar to the case at bar. It was a two-car collision at the intersection of two city streets in a drizzling rain. Defendant was driving on the favored street. Plaintiff had stopped as required, observed defendant's car about one-half block away, *293 ascertained she could cross safely and then attempted to do so. Plaintiff's car cleared the center of the intersection before it was hit. Defendant's testimony was that he was driving between 20-25 miles per hour when he began braking 40 feet from the intersection. This the trial court chose not to believe.
The trial court found that the defendant was negligent in driving at an excessive rate of speed under the circumstances, had failed to keep a proper lookout, and had failed to respect the right of way to which plaintiff's automobile was entitled as a result of having pre-empted the intersection.
The appellate court agreed with the trial court decision and quoted from the "well written reasons for the judgment." We agree that the reasoning is sound and quote the following paragraphs which are applicable to the case at bar:
"It is also well settled that the driver of a vehicle approaching an intersection is entitled to assume that another automobile approaching on the other street will do so at a moderate rate of speed, and will observe the regulations and ordinances with reference to speed. White v. Neff, La.App., 11 So.2d 289, Fulmer v. United States Fidelity & Guaranty Company, La.App., 5 So.2d 923.
"While it is true that a motorist should stop before entering a right of way street and carefully observe the traffic conditions on the right of way street and make no entry thereon unless conditions warrant it, the Court believes that under the facts in this case Mrs. Gauthier was justified in entering the right of way street because she would have had plenty of time to have negotiated the intersection had the Ford automobile been traveling at a reasonable rate of speed. A right of way is not a right of pre-emption and vehicles traveling on a favored street may not disregard the rights of other vehicles by undue insistence upon that right. Bethancourt v. Bayhi, La.App., 141 So. 111.
As to pre-emption of the intersection by Moss, we quote from Fidelity & Casualty Company of New York v. McCasland, 203 So.2d 756 (La.App. 3rd Cir. 1967) at page 760:
"The doctrine of pre-emption of intersections has a double barrel effect, which is that when it applies in favor of one party, it not only frees that party from negligence proximately causing the injury, but furthermore, establishes the negligence of the other party."
We think the facts of this case support the application of the doctrine of pre-emption in favor of Donald Moss. The record reveals nothing to contradict the testimony of Mr. Moss and his sister that he stopped at the stop sign, looked to his left, in the direction from which Miss Tamney was approaching, and he saw no vehicle approaching. Moss testified that within three or four seconds after looking to the left, he began to cross the intersection. His vehicle had crossed the outside lane and was entirely in the inside lane before the impact. The left front of the Tamney car struck behind the left rear wheel of the Moss automobile. If Moss had been able to drive another four or five feet, the Tamney car would have passed to his rear. Clearly, if Miss Tamney had been going 35 miles per hour instead of 50, Moss would have crossed safely and the accident would not have occurred. Even if we were to assume that Moss should have seen the Tamney vehicle when he looked to his left, he would have been justified in entering the intersection, because he would have had ample time to cross safely had Miss Tamney not been driving at a highly excessive speed.
We conclude that Moss did pre-empt the intersection, and that he was not guilty of any negligence which constituted a legal cause of this accident. Joanie Tamney's grossly excessive speed was the sole, legal cause of the collision.
Turning now to the issue of damages, we must consider the personal injuries to both Donald Moss and Glenda Dalmage and the property damage suffered by Emery Higginbotham, owner of the vehicle being driven by Moss. Since the trial judge made no awards, we are not restricted by the rules *294 in Coco v. Winston Industrial, Inc., 341 So.2d 332 (La.1977) and Schexnayder v. Carpenter, 346 So.2d 196 (La.1977) as to increasing or reducing awards. We must use our own discretion as to the amounts awarded.
As a result of this collision, Mr. Moss sustained a laceration over the left eye, a cut on the little finger of the right hand and contusions to the chest. There were also slight abrasions and lacerations on the ring and middle fingers.
By the time of trial, one doctor, who had last treated Mr. Moss two months after the accident, felt Mr. Moss would suffer about a 15% permanent disability of the right hand. A second doctor testifying by way of a deposition stated that while there was a disfiguring two-inch scar around the little finger and up the back of the hand, the patient had full range of motion of all joints and no residual disability in the tendons or the joints as a result of the scar. This doctor found that the scarred finger would be uncomfortable when it was hit, but he did not believe Mr. Moss would have any significant permanent partial functional disability.
Mr. Moss testified that he suffered discomfort in the chest area for two months after the accident. He also admitted that his hand continued to improve and the stiffness the doctor had warned about never developed. In fact, he only noticed the injured finger during weather changes. He did say he couldn't pick up as much weight as he used to. Mr. Moss was not employed at the time of the accident but was employed at the time of trial. He makes no claim for loss of wages and has no problem performing his current work. His total medical bills to date are $683.75.
In Distefano v. Lumbermen's Mutual Casualty Company, 340 So.2d 1110 (La.App. 3rd Cir. 1976) we affirmed a general damage award of $3,000 for a 5% over-all impairment of the right hand where plaintiff returned to manual labor as a deckhand on a boat.
A motorcycle policeman found to have a comminuted fracture of the radius of the left wrist and dislocation of the ulna and who was hospitalized for three days in addition to undergoing surgery was awarded $3,750. He had a 10% permanent disability of the wrist. We affirmed that award as being neither inadequate nor excessive. Aucoin v. Fidelity General Insurance Company, 219 So.2d 532 (La.App. 3rd Cir. 1969).
We find an award of $4,000 to Donald Moss is appropriate for his general damages.
Immediately after the accident, Mrs. Dalmage did not think she was injured. Dr. Melvin Gold testified that when he examined Mrs. Dalmage two days after the accident he found a moderate cervical strain or whiplash, and a very mild lumbar back strain. Mrs. Dalmage makes no claim for lost wages and there appears to be no permanent injury which would interfere with her job as a switchboard operator and receptionist. Her medical expenses were $493.43.
An award of $500 general damages was upheld as adequate for a woman who suffered with headaches and a stiff neck for about two weeks after an automobile collision. Overturf v. Bernard, 331 So.2d 94 (La.App. 1st Cir. 1976).
The appellate court found neither excessive nor inadequate an award of $2,000 to a man who suffered contusion of the skull and severe, acute cervical strain, which resulted in pain in his neck area, and weakness in his arms and hands, as well as severe headaches and some periodic pain and discomfort for two or three months. Augello v. Call, 210 So.2d 129 (La.App. 4th Cir. 1968).
We award Glenda Dalmage $2,000. We think this is in the range dictated by the facts of this case.
The parties here stipulated that the value of Mr. Higginbotham's Oldsmobile was $350. We therefore award him that amount as damages.

*295 DECREE
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiffs and against the defendant, Travelers Indemnity Company, as follows: (1) in favor of Donald L. Moss for the sum of $4,693.75, together with legal interest thereon from date of judicial demand until paid; (2) in favor of Glenda Dalmage for the sum of $2,493.43, together with legal interest thereon from date of judicial demand until paid; (3) in favor of Emery P. Higginbotham for the sum of $350, together with legal interest thereon from date of judicial demand until paid. It is further ordered, adjudged and decreed that plaintiffs have judgment against defendant for all costs in the district court, as well as the costs of this appeal.
REVERSED AND RENDERED.