650 So.2d 1189 (1994)
Howard JARREAU, Jr.,
v.
Erica HIRSCHEY, et al.
No. 93 CA 1402.
Court of Appeal of Louisiana, First Circuit.
December 7, 1994.
Rehearing Denied February 23, 1995.
Writ Denied May 12, 1995.
*1191 James R. Coxe, Jr., Baton Rouge, for appellant, Howard Jarreau, Jr.
W. Scott Maxwell, Baton Rouge, for appellees, Fidelity Fire & Cas. Ins. and LIGA.
Before LOTTINGER, C.J., and CARTER, GONZALES, WHIPPLE and PARRO, JJ.
GONZALES, Judge.
This is an appeal from a trial court judgment in an action for damages arising out of two automobile accidents.

FACTS
On July 23, 1990, Howard Jarreau, Jr. was involved in an automobile accident when a vehicle being driven by Erica Hirschey failed to yield the right of way when leaving a private parking lot and struck the right side of Jarreau's vehicle. As a result of the accident, Jarreau's vehicle was totalled, and Jarreau allegedly sustained serious, permanent injuries. Shortly thereafter, on August 14, 1990, Jarreau was involved in a second automobile accident when the vehicle he was driving was struck from the rear by a vehicle being driven by Donnie R. McPipe. As a result of this accident, Jarreau allegedly sustained serious injuries.
On June 17, 1991, Jarreau filed the instant suit for damages. Named as defendants in the action were: Erica Hirschey, the tortfeasor in the first accident; Continental Casualty Insurance Company (Continental), Hirschey's liability insurer; Donnie McPipe, the tortfeasor in the second accident; Fidelity Fire Insurance Company (Fidelity), McPipe's liability insurer; and Colonial Insurance Company of California (Colonial), Jarreau's uninsured/underinsured motorist (UM) insurer. In his petition, Jarreau alleged that the defendants were jointly and solidarily liable for the injuries he suffered in each of the two accidents, which combined to cause his cervical and lumbar injuries.
By partial judgment of dismissal dated August 1, 1991, Jarreau dismissed Hirschey, Continental, and Colonial.[1] In the judgment of dismissal, Jarreau reserved his rights to proceed against McPipe and Fidelity. Fidelity was placed in liquidation on September 4, 1991. Thereafter, on December 4, 1991, Jarreau filed a motion to substitute the Louisiana Insurance Guaranty Association (LIGA) as a defendant for Fidelity. Subsequently, on April 15, 1992, Jarreau filed a supplemental and amending petition, adding LIGA as a defendant.
On August 12, 1992, Jarreau filed a motion for partial summary judgment on the issue of liability as to McPipe and LIGA. In his motion, Jarreau contended that, because he had settled with his uninsured motorist insurer prior to Fidelity's insolvency, LIGA was liable for the first $10,000.00 of liability to Jarreau. Jarreau reasoned that, on the date of Fidelity's insolvency, there was no other coverage available to Jarreau.[2]
On October 30, 1992, Jarreau filed a motion for preliminary default against LIGA for its failure to answer the first supplemental and amending petition. On November 5, 1992, the trial judge ordered that a preliminary default be entered against LIGA.[3]
On March 19, 1993, Jarreau, McPipe, and LIGA entered into a joint stipulation. In the stipulation, the parties stipulated to the following: (1) that all of Jarreau's medical expenses had been paid by other insurers; (2) that Hirschey and Continental paid Jarreau $9,500.00 to settle their responsibility in the first accident; (3) that Colonial paid Jarreau $7,500.00 to satisfy its responsibility as UM *1192 carrier in both accidents;[4] (4) that Jarreau's medical records could be received and entered into evidence without any further foundation; and (5) that Jarreau's insurance policy and settlement documents with Colonial could be received into evidence without further foundation.
On March 30, 1993, the matter went to trial. After hearing all of the testimony and receiving all of the evidence, the trial court took the matter under advisement. On May 6, 1993, the trial court rendered judgment in favor of LIGA, Fidelity, and McPipe, dismissing Jarreau's claims against them, with prejudice, and ordering that Jarreau pay all costs. The court noted that Jarreau had failed to prove loss of earnings and his inability to work. Moreover, the trial court indicated the following:
Considering the relatively minor injuries sustained by plaintiff herein as established of record, the Court feels that the prior recovery of $17,000.00 amply compensates for all damages sustained as a result of said injuries as well as any special damages to which plaintiff may have been entitled.
From this adverse judgment, Jarreau appealed, assigning the following specifications of error:
1. The trial court erred in failing to apportion fault between the successive tortfeasors whose combined fault caused plaintiff's injuries and with regard to the effect given Jarreau's settlement with Hirschey and Continental as to the first accident.
2. The trial court erred in awarding insufficient damages.
3. The trial court erred with regard to the effect given Jarreau's settlement with his UM carrier prior to Fidelity Fire and Casualty Insurance Company's liquidation.
4. The trial court erred with regard to the effect of McPipe's liability for his deductible of $100.00, costs, and interest which are not "covered claims" as to LIGA.[5]

NONDUPLICATION OF RECOVERY PROVISION
At the times of the accidents involved herein (July 23, 1990 and August 14, 1990), La.R.S. 22:1386, provided, in pertinent part, as follows:
(1) Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this Part shall be reduced by the amount of any recovery under such insurance policy.

A. The 1990 Amendment

Shortly after the accidents at issue, the legislature passed Acts 1990, No. 130, effective September 7, 1990, amending La. R.S. 22:1386 to read as follows:
(1) Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, and other medical expense coverage. Any amounts payable by such other insurance shall act as a dollar-for-dollar credit against any liability of the association under this Part. (Emphasis added).
The amendment clearly required an injured claimant to first exhaust his claim against his UM insurer prior to pursuing his claim against LIGA and that any amounts payable by a policy of insurance would be treated as a dollar-for-dollar credit against LIGA's liability.
In the instant case, Jarreau contends that the 1990 amendment is inapplicable because *1193 both accidents occurred prior to the amendment's effective date. We agree.
Recently, in Segura v. Frank, 93-1271 c/w 93-1401, (La. 1/14/94); 630 So.2d 714, 725, cert. denied sub nom, ___ U.S. ___, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994), the Louisiana Supreme Court determined that the 1990 amendment to La.R.S. 22:1386 is neither procedural nor interpretive in nature, but substantive. The court further determined that, because the legislature expressed no intent in Act 130 of 1990 to apply the amendment retroactively, under La.C.C. art. 6, the amendment could have prospective application only.[6]
Accordingly, because the Louisiana Supreme Court has already determined that the 1990 amendment to La.R.S. 22:1386 has prospective application only, the 1990 amendment does not apply to Jarreau's claims, which arose prior to the effective date of the legislation.

B. The 1992 Amendment

By Acts 1992, No. 237, the legislature again amended and reenacted La.R.S. 22:1386. Section A of La.R.S. 22:1386 was amended to read as follows:
A. Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, and other medical expense coverage. As to the association, any amount payable by such other insurance shall act as a credit against the damages of the claimant, and the association shall not be liable for such portion of the damages of the claimant. (Emphasis added).
Section 3 of the Act provided that the Act would apply to "all covered claims, as defined in R.S. 22:1379, pending on or arising on or after the effective date of this Act." The effective date of the 1992 amendment was June 10, 1992.
The retroactivity of the 1992 amendment was also decided in Segura v. Frank. In Segura v. Frank, the Louisiana Supreme Court held that the 1992 amendment to La. R.S. 22:1386 would apply retroactively if two requisites were met. First, the claim had to be "pending" on June 10, 1992, the effective date of Act 237 of 1992. The court determined that a claim is "pending" as long as it is subject to judicial scrutiny. The court expressly noted that "[e]ven though a lower court has adjudicated a claim and rendered judgment, the claim continues to be pending until appeal of that judgment has been exhausted." Segura v. Frank, 630 So.2d at 727. Second, retroactive application of the amendment did not violate the federal and state constitutional prohibitions against impairment of contractual obligations or disturbance of vested rights. Segura v. Frank, 630 So.2d at 733.
In the instant case, we must determine whether Jarreau's claim against his UM carrier was "pending" on June 10, 1992. If the claim was pending at that time, La.R.S. 22:1386, as amended, applies retroactively to this claim, and LIGA will be considered the excess insurer. See Segura v. Frank.
La.C.C. art. 3071 defines "transaction or compromise" as "an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing." Joseph v. Ford Motor Company, 509 So.2d 1, 2-3 (La.1987). It is well settled that compromise agreements between interested parties have a force equal to the authority of the thing adjudged. Thus, they can be used as a bar to subsequent litigation. La.C.C. art. 3078; Landmark Land Company of Louisiana, Inc. v. Jemison, 558 So.2d 802, 805 (La.App. 5th Cir.1990). A compromise, under which the defendants pay a certain *1194 amount and are released from further liability in writing, has the authority of a judgment between the parties. See United States Fidelity and Guaranty Company v. Safeco Insurance Company of America, 420 So.2d 484, 487 (La.App. 1st Cir.1982).
On July 18, 1991, when Jarreau settled his claim with Colonial for $7,500.00, and Colonial paid that amount and was released from further liability in writing, a compromise of the claim resulted. This compromise had the authority of a judgment between the parties. See La.C.C. arts. 3071, 3078. Therefore, Jarreau's claim against Colonial was not "pending" on June 10, 1992. Accordingly, the 1992 amendment to La.R.S. 22:1386 cannot be applied retroactively under these facts. See Segura v. Frank, 93-1271 c/w 93-1401, p. 16, (La. 1/14/94); 630 So.2d at 726.
Because neither the 1990 or 1992 amendment is applicable in the instant case, Jarreau was not required to exhaust his rights under his UM policy prior to proceeding against LIGA.

SEPARABILITY OF INJURIES
Jarreau argues that the trial court erred in failing to apportion fault between the two tortfeasors in this case. It is Jarreau's position that the injuries he sustained in the two auto accidents are insusceptible of apportionment and that the two tortfeasors are solidarily liable for his damages as joint tortfeasors.
Although we agree that the trial court should have apportioned damages between Hirschey and McPipe, we do not agree that they are solidarily liable. Solidary liability between tortfeasors does not arise where each of the tortfeasors commits an entirely separate, negligent act. Jackson v. Hadley, 601 So.2d 382, 384 (La.App. 5th Cir. 1992); Perez v. State Farm Insurance Companies, 458 So.2d 218, 221 (La.App. 5th Cir. 1984); McCreary v. Commercial Union Insurance Company, 372 So.2d 745 (La.App. 4th Cir.1979); Bolin v. Hartford Accident & Indemnity Company, 204 So.2d 49, 51 (La. App. 2d Cir.1967). The rule that multiple defendants can be held liable for damages sustained in separate accidents when those damages cannot be separated among the accidents may have logical application in those cases where the accidents are basically simultaneous. In such case, it is virtually impossible to properly evaluate the damages sustained because the accidents occur so close in time. However, where the accidents do not occur close in time, as in this case, an assessment of the damages from the first accident can be made prior to the second accident and are separable from any damages alleged to have been caused by the second accident. Hess v. Sports Publishing Company, 520 So.2d 472, 474 (La.App. 4th Cir.), writ denied, 523 So.2d 1343 (La.1988).
In this case, Hirschey is 100% liable for the damages sustained by Jarreau in the first accident, and McPipe is 100% liable for the damages sustained by Jarreau in the second accident. It was Jarreau's burden to establish which damages were attributable to which accident. The trial court found that Jarreau sustained "relatively minor injuries," that he failed to carry his burden of proving loss of earnings and inability to work, and that the $17,000.00 he received in settlement from Hirschey, Continental, and Colonial amply compensated him for all damages sustained in both accidents. Although we accept these determinations by the trial court as free from manifest error, we find it necessary to apportion how much of the damages are attributable to which accident in the event a contribution claim is made among the defendants. Since the entire record is before us, we need not remand the case to the trial court, but may make the allocation ourselves. Gonzales v. Xerox Corporation, 320 So.2d 163, 165 (La.1975); Burdis v. Lafourche Parish Police Jury, 618 So.2d 971, 977 (La.App. 1st Cir.), writ denied, 620 So.2d 843 (La. 1993).
"In general, entire liability is imposed [on a single defendant] only where there is no factual basis for holding that one wrongdoer's conduct was not a cause in fact or part of the harm." Prosser and Keeton on Torts, § 52, "Apportionment of Damages" at 346 (5th edition, 1984). Although neither of the physicians who examined Jarreau was able to proportionately split Jarreau's injuries *1195 between the two accidents, there is other evidence in the record by which the apportionment could have been made. Both Jarreau and his wife testified regarding his condition after the first accident as compared to his condition after the second accident. Further, the record indicates that the second accident caused a mere $400.00 in damages to Jarreau's car, which constitutes circumstantial evidence that the second accident was less severe than the first accident.
Recognizing that the apportionment of damages involving two accidents necessarily contains an inherent degree of arbitrariness, Buccola v. Marchese, 599 So.2d 892, 895 (La.App. 4th Cir.1992), we assign 80% of the damages to Hirschey and 20% of the damages to McPipe.

QUANTUM
Before a court of appeal can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its much discretion in making the award. La.C.C. art. 2324.1; American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d 429, 433 (La.1991); Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976); Callender v. Delchamps, Inc., 542 So.2d 140, 144 (La.App. 1st Cir. 1989). The initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact's much discretion. Reck v. Stevens, 373 So.2d 498, 501 (La.1979). Recently in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the Louisiana Supreme Court noted that:
[T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
In the instant case, Jarreau testified that, prior to the automobile accidents at issue herein, he was employed as a carpenter's helper. He stated that the job required that he be able to paint and perform roofing work. Jarreau stated that, prior to the accidents, he had not experienced neck or back problems.
Jarreau testified that the first accident occurred on July 23, 1990, and that, as a result of the accident, his vehicle was totalled and he sustained serious neck and back injuries. Jarreau indicated that, approximately three weeks after the first accident, he was involved in the second accident. He stated that the accident caused him to sustain neck and back injuries. However, Jarreau acknowledged that the second accident only caused $400.00 of property damage to his vehicle. According to Jarreau, he had not yet recovered from the first accident when the second one occurred.
Jarreau further testified that, after the second accident, he experienced severe neck and back pain, which prevented him from sleeping at night. Jarreau stated that he is now unable to do the work required of a carpenter's helper as he cannot climb, lift, bend, or twist, and he cannot stand or sit for long periods of time. Jarreau acknowledged that he tried to work for two days, but could not do the job because of the severe pain he experienced. Jarreau indicated that he takes pain medication and muscle relaxers for the neck and back pain.
Jarreau's wife, Deborah, testified that, prior to the accidents, Jarreau brought home approximately $200.00 per week (if it did not rain during the week). She stated that, after the first accident, Jarreau began complaining of neck and back pain, could not bend or do "normal everyday things," and that he was unable to sit or stand for long periods. Deborah also indicated that Jarreau did not sleep well following the first accident.
According to Deborah, Jarreau was still experiencing neck and back pain immediately prior to the second accident and was having difficulty walking and sleeping at that time. *1196 She indicated that, after the second accident, Jarreau complained of having a severe headache, along with neck, shoulder, and right arm pain. Deborah stated that Jarreau appeared to have become "a whole lot worse" after the second accident. She indicated that she had to assist him in getting out of bed, out of a chair, and out of the bathtub. Deborah testified that Jarreau had difficulty bending, twisting, and stooping. Although the medication helps to some extent, Deborah stated that Jarreau continues to experience severe back pain on some days.
When asked whether Jarreau experienced any of these problems prior to the accidents involved herein, Deborah stated that he did not. However, on cross-examination, Deborah acknowledged that Jarreau had previously been involved in two slip and fall accidents, which injured his back. Nonetheless, Deborah indicated that Jarreau's previous back injuries had not been as severe as the injuries resulting from the two automobile accidents.
The medical reports of record reveal that Dr. Michael L. Rolfsen first treated Jarreau on August 1, 1990, following the initial automobile accident. Upon examining Jarreau, Dr. Rolfsen found that Jarreau had mild right paraspinous tenderness and no spinal tenderness over the back. Dr. Rolfsen determined that Jarreau had a sprain and advised him to use muscle relaxers.
Dr. Robert J. Nicholson determined that Jarreau had pre-existing lumbar disc disease which was asymptomatic at the time of the automobile accidents on July 23 and August 14, 1990. Dr. Nicholson was unable to determine which accident was the "main culprit" in reference to Jarreau's lower back problems.
As to Jarreau's cervical complaints, Dr. Nicholson's report reveals that Jarreau had no history of neck problems prior to the July 23, 1990, accident. Following the initial accident, Jarreau developed pain in the neck and shoulder regions, which necessitated evaluation and treatment in the emergency room at Our Lady of the Lake Regional Medical Center. According to Dr. Nicholson, following the second accident on August 14, 1990, Jarreau was again taken to the emergency room at Our Lady of the Lake Regional Medical Center for evaluation and treatment. Dr. Nicholson stated that this second accident apparently caused the cervical symptoms Jarreau was experiencing following the first accident to "flare up."
Dr. Nicholson opined that Jarreau suffered from a cervical strain, as well as lower back pain, which originated from lumbar disc disease at the L4-5 level. Dr. Nicholson noted that the lumbar disc disease was noted on the Magnetic Resonance Imaging (MRI) and plain x-ray studies. Dr. Nicholson noted that, to date, Jarreau's medical treatment had been conservative. No surgical recommendations had been made, and none were contemplated, for the cervical injuries, but surgical options for the lower back condition had been discussed with Jarreau. Dr. Nicholson stated that, based on the studies performed, Jarreau should have surgery on his lower back to perform a one-level fusion at the L4-5 level. Costs of this procedure were estimated by Dr. Nicholson to be approximately $6,000.00 with a surgical assistance fee of 25%. The procedure would also involve hospitalization for seven to ten days.
Linda Ellis Darphin, a physical therapist with the Occupational Performance Center, performed a functional capacities evaluation on Jarreau on March 12 and 13, 1991. Darphin noted that Jarreau had difficulty with lumbar extension and flexion, which correlated with his difficulties with prolonged kneeling and forward bending. Darphin further noted that Jarreau experienced pain during the evaluation. According to Darphin, Jarreau had limited functional capabilities with regard to lumbar flexion and extension because of lower back pain. Darphin recommended that his employment as a painter and sandblaster be restricted with regard to forward bending and rotation or significant lumbar extension. Darphin also placed a weight-lifting limit of fifty pounds on Jarreau.
In finding that Jarreau's prior recovery of $17,000.00 amply compensated him for all of the damages, including general and special damages sustained as a result of the two automobile accidents, the trial judge made *1197 numerous credibility determinations. The trial judge determined that the physical therapist was not qualified as an expert witness and rejected her disability rating based on the inadmissibility of her report. The trial judge also noted that Jarreau testified relative to his inability to work, but that this testimony was not corroborated by any medical evidence. The court also noted that Jarreau's claim for loss of earnings was not supported by the record.
In the instant case, we cannot say that the award is below that which a reasonable trier of fact could assess for the effects of the particular injury to this particular plaintiff given the credibility determinations made by the trial court. Credibility determinations are subject to the strictest deference and the manifest error-clearly wrong standard demands great deference for the findings of the trier of fact. Theriot v. Lasseigne, 93-2661 (La. 7/5/94); 640 So.2d 1305, 1313. As such, we cannot say that the trial judge abused his discretion in determining that Jarreau's damages did not exceed $17,000.00.

DECREE
For the above reasons, the judgment of the trial court is modified to assess 80% of the damages to Hirschey and 20% of the damages to McPipe. In all other respects, the judgment of the trial court is affirmed. Costs are assessed against McPipe.[7]
WHIPPLE, J., dissents in part and concurs in part for reasons assigned by CARTER, J.
CARTER, J., concurs in part and dissents in part and assigns reasons.
CARTER, Judge, concurring in part and dissenting in part.
I concur with the majority opinion insofar as it concludes that Jarreau was not required to exhaust his rights under his UM policy prior to proceeding against LIGA. However, I respectfully dissent from the majority opinion insofar as it modified the trial court judgment, assessed damages among Hirschey and McPipe, and failed to award Jarreau damages against McPipe and LIGA.
With regards to the issue of separability of injuries, the law clearly provides that when two separate accidents concur to produce injuries which cannot be separated, the burden is on each defendant to prove his own innocence or his own limited liability for the accident sued upon. Probst v. Wroten, 433 So.2d 734, 743 (La.App. 5th Cir.1983), on rehearing. See Bergeron v. Thomas, 314 So.2d 418, 426 (La.App. 1st Cir.), writ refused, 318 So.2d 54 (La.1975). The majority cites a plethora of cases wherein the trier of fact was able to separate the injuries produced from separate accidents. In cases where separation of the injuries is possible, the position of the majority would be appropriate. However, in cases like the instant case, where there is limited evidence as to the separability of the injuries in separate accidents occurring only twenty-one days apart and where the trial court is unable to separate which accident caused which injuries, the law and equity requires a different result.
In the instant case, the only evidence of record relative to the separability of the injuries Jarreau received during the two automobile accidents are the medical reports of Drs. Robert J. Nicholson and Michael L. Rolfsen. Dr. Nicholson stated that he could not separate the cause and effect of each accident, and Dr. Rolfsen noted that it was difficult to assess which injury arose from which accident.
Relying on the reports of Dr. Nicholson and Dr. Rolfsen, and in the absence of any evidence presented by the defendants to the contrary, I believe that this court, like the trial court, is unable to attribute with any degree of certainty the various injuries suffered by Jarreau on a proportionate basis to each of the respective accidents. See Probst v. Wroten, 433 So.2d at 743. As such, Hirschey and McPipe should be held to be joint tortfeasors.
Joint tortfeasors are solidarily liable for the damages resulting from their concurrent *1198 negligence or wrongdoing. Carroll v. Kilbourne, 525 So.2d 284, 286 (La.App. 1st Cir. 1988). As solidary obligors, either defendant could be compelled to pay the whole judgment. LSA-C.C. art. 1794; Carroll v. Kilbourne, 525 So.2d at 286. Since LIGA stands in the shoes of McPipe's liability insurer, LIGA is liable for the full amount of Jarreau's injuries.
Generally, payment by one solidary obligor exonerates the other as to the obligation to the victim. LSA-C.C. art. 1794; Hoefly v. Government Employees Insurance Company, 418 So.2d 575, 579 (La.1982). Settlement prevents contribution from a joint tortfeasor; the remedy provided by law in such cases is to reduce the award proportionately, depending on the number of joint tortfeasors. Carroll v. Kilbourne, 525 So.2d at 286. When a plaintiff releases a joint tortfeasor, the unreleased tortfeasor is effectively deprived of the right of contribution. Recognizing this rule, the Third Circuit Court of Appeal in Harvey v. Travelers Insurance Company, 163 So.2d 915, 922 (La.App. 3rd Cir.1964), held that the plaintiff in such a situation is only entitled to a proportionate amount of his damages from the unreleased tortfeasor.
Moreover, an obligee's release of a joint tortfeasor reduces the amount recoverable against the remaining tortfeasors by the amount of the virile (pro rata) share of the one released, since the plaintiff, in releasing a joint tortfeasor, has prejudiced the remaining tortfeasor by depriving him of his right to contribution from the one released. Joseph v. Ford Motor Company, 509 So.2d 1, 3 (La.1987); Barnes v. L.M. Massey, Inc., 612 So.2d 120, 125 (La.App. 1st Cir.1992), writ denied, 614 So.2d 81 (La.1993); Carroll v. Kilbourne, 525 So.2d at 287. If the obligation arises from an offense or a quasi-offense, the liability of the solidary obligors is reduced in the amount of the virile portion of the settling tortfeasor. LSA-C.C. arts. 1803 and 1804; Lavergne v. Lawtell Gravity Drainage District No. 11, 562 So.2d 1013, 1017-18 (La.App. 3rd Cir.1990).
In the instant case, the obligation due Jarreau by Hirschey and McPipe arises from an offense or quasi-offense. The liability of the remaining solidary obligor, McPipe (and LIGA), should be reduced by the amount of the virile portion of the settling tortfeasor, Hirschey. Because in this case it is impossible to apportion fault between the tortfeasors, McPipe's and LIGA's liability should be reduced by 50%. See Brooks v. Roussel, 384 So.2d 576 (La.App. 4th Cir.1980).
Accordingly, Jarreau should be entitled to recover from McPipe and LIGA $8,500.00 ($17,000.00 reduced by the virile share of the released tortfeasor), subject to a credit for LIGA in the amount of $100.00.[1]
For these reasons, I concur with the majority opinion insofar as it concludes that Jarreau was not required to exhaust his rights under his UM policy prior to proceeding against LIGA. However, I respectfully dissent from the majority opinion insofar as it modified the trial court judgment, assessed damages among Hirschey and McPipe, and failed to award Jarreau damages against McPipe and LIGA.
NOTES
[1] Jarreau settled his claims against Hirschey and Continental for $9,500.00 and against Colonial for $7,500.00.
[2] The minutes in the record indicate that, on September 25, 1992, a hearing was held on the motion for partial summary judgment. The minutes further reveal that the parties entered into a stipulation, that the trial judge granted the motion, and that a judgment was to be signed in accordance with that ruling. However, no such judgment is contained in the record.
[3] Although LIGA had not filed an answer to Jarreau's petition, there is no indication in the record that a confirmation hearing was held on the default judgment. At trial, LIGA orally denied all of the allegations contained in Jarreau's petition.
[4] We note that the release and trust agreement executed by Jarreau and Colonial reveals that Jarreau released Colonial from liability arising from the August 14, 1990 accident.
[5] Although this opinion does not address each assignment of error separately, all issues are adequately disposed of herein.
[6] The court also determined that the amendment was substantive in nature because retroactive application of the amendment would affect the UM insurers' substantive rights by increasing their obligations under policies issued prior to the amendment's effective date.
[7] In 1993, the legislature passed Act 651, effective August 15, 1993, amending and reenacting La.R.S. 13:4521(A), and Act 958, effective June 25, 1993, amending and reenacting La.R.S. 13:4521(A) and (B) and 13:5112(A) and (B). Both acts provide that LIGA shall not be required to pay court costs in any judicial proceeding by or against it.
[1] Generally, LIGA is liable for each covered claim which is in excess of $100.00. LSA-R.S. 22:1382 A(1)(a); Johnson v. Midland Insurance Company, 541 So.2d 1010, 1013 (La.App. 3rd Cir.1989). See Harris v. Lee, 387 So.2d 1145, 1146 (La.1980). Under LSA-R.S. 22:1379, a "covered claim" does "not include any claim based on or arising from a pre-insolvency obligation of an insolvent insurer, including but not limited to contractual attorneys' fees and expenses, statutory penalties and attorneys' fees, court costs, interest and bond premiums, or any other expenses incurred prior to the determination of insolvency."