845 So.2d 599 (2003)
THE TIMES PICAYUNE PUBLISHING CORPORATION and Susan Finch
v.
THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY and Agricultural and Mechanical College, Dr. William L. Jenkins as President of the Louisiana State University System and Secretary of the Board of Supervisors, the State of Louisiana Through the Division of Administration and William J. Kling, Jr., Acting State Risk Director and Deputy Undersecretary of the Division of Administration.
No. 2002 CA 2551.
Court of Appeal of Louisiana, First Circuit.
May 9, 2003.
*601 James R. Swanson, Loretta G. Mince, New Orleans, Counsel for Appellees The Times Picayune Publishing Corporation and Susan Finch.
Bruce Cranner, New Orleans, Counsel for Appellants LSU Board of Supervisors.
Before: FOIL, MCCLENDON, and KLINE[1], JJ.
KLINE, J., Judge Pro Tem.
This is an appeal from a declaratory judgment and the issuance of a writ of mandamus holding that specific documents reflecting payment made by the State in settling a lawsuit were public records and ordering the State's Office of Risk Management to allow public access to those documents. From this judgment, the State has appealed. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
In 1992, Mary Elizabeth Leger and her husband filed suit against Professor John N. Kent, D.D.S., Louisiana State University School of Dentistry and Faculty Dentist Practice among others, alleging dental malpractice and products liability arising from Dr. Kent's design of the Vitek implant and his surgical placement of the implant in Ms. Leger's temporomandibular joint.
In 1998, Ms. Adleman-Chester, along with approximately 674 other individuals, filed suit against many of the same parties asserting various claims concerning the Vitek implant. The plaintiffs in the Adelman-Chester case sought to have their case consolidated with the Leger case. Despite the State's opposition, the Civil District Court for the Parish of Orleans *602 did consolidate the cases, but limited that consolidation to discovery purposes only.
Eventually, the Office of Risk Management (ORM), the department charged with handling claims asserted against the State, began negotiations with the Legers relative to their claims. The ORM and the Legers reached a settlement on April 26, 2001 and subsequently signed an agreement to keep the terms of the settlement confidential. The parties also filed a joint motion to dismiss, with prejudice, the Legers' suit against all defendants. The motion to dismiss was granted on June 1, 2001.
On April 25, 2002, Susan Finch, a staff writer for The Times-Picayune, wrote a letter to Whitman J. Kling, Jr., then acting director of the Office of Risk Management, requesting copies of public records pursuant to the Louisiana Public Records Act. Specifically, Ms. Finch requested "copies of any check or checks, together with any related documents, that reflect payment by the State of Louisiana to settle... [the case] entitled Mary Elizabeth Leger et al versus John N. Kent, D.D.S. et al."
Mr. Kling's response of April 29, 2002 advised Ms. Finch that her public records request regarding the Leger case could not be fulfilled. Mr. Kling asserted that the Leger case was an "open claim file and under the provisions of LRS 44:4(15)[was] not subject to disclosure under" the Louisiana Public Records Act.
On May 16, 2002, James Swanson, counsel for The Times-Picayune, wrote to Mr. Kling regarding his refusal of Ms. Finch's request, as follows:
"In your letter, you have refused to provide records relating to a settlement entered into in the Spring of 2001 with Mary Elizabeth Leger on the basis that there is still a pending claim file. I cannot understand why, except as a device to defeat a Public Records Law request, this would be since this claim has been settled for well over a year. Before I bring a suit under the Public Records Act... I want to be sure I understand your position. I would, therefore, appreciate if you would outline in more detail the basis of the contention that the file is currently pending."
The ORM again responded on May 20, 2002 in a letter authored by newly appointed ORM Director, Julian S. Thompson, Jr.[2] The letter stated:
"Mary Elizabeth and Albert Leger v. John Kent, D.D.S." remains an open file in the Office of Risk Management at this time. We decline to provide you with further information regarding the matter except to reiterate that the contents of open files are exempt under the Public Records Act.
Consequently, The Times-Picayune and its writer Susan Finch filed suit against the State pursuant to the Public Records Act. Specifically, they prayed that the court issue a declaratory judgment that the sought-after information was public record as defined by the Act and that a writ of mandamus be issued ordering the Office of Risk Management to produce the requested information.[3]
The State filed its answer on July 22, 2002 wherein it averred that the records requested by the The Times-Picayune were exempt "from the provisions of the Louisiana Public Records Act, pursuant to R.S. 44:4(15) as the information requested *603 [was] contained in a matter that is considered pending/open at the Office of Risk Management."
Soon thereafter, in an affidavit dated August 13, 2002, Julian S. Thompson, Jr. stated:
(1) That he is a Director of Risk Management for the State of Louisiana;
(2) That he is familiar with the status of the file entitled: Leger v. Kent, ORM File # 93X/0824LEGER, which is in the custody and control of the Office of Risk Management for the State of Louisiana and under his jurisdiction as the Director of Risk Management for the State of Louisiana;
(3) That this file was opened in the Office of Risk Management as a litigation file on the 11th day of December, 1992 and remains a pending claim file in litigation....;
(4) That the file Leger v. Kent, ORM File # 93X/0824LEGER, will remain a pending claim file until the resolution of the jaw implant litigation involving LSU and Dr. Kent.
A hearing on the matter was set for September 6, 2002. Although the Legers' claims had been settled and their suit dismissed by June of 2001, ORM Director Thompson maintained that the Leger file still retained pending status because other claims involving the Vitek implant were still pending. At the hearing, ORM Director Thompson was questioned as follows:
Q: Do you have any idea how it could be that once a case is dismissed it would still be consolidated and pending with another case? Can you explain that concept?
A: In this particular case all the discovery and litigation strategy was developed under this case, under the contracts that we had issued for this case, and so they are held in that file and that (sic) are related to all the other Vitek cases.
Q: Let me ask you this. There isin the Office of Risk Management there is a file for the Leger case, is that correct?
A: Yes.
Q: And there is a file for the Adelman-Chester case?
A: Yes.
Q: And those are separate files?
A: Yes.
* * * * * *
Q: You would also agree that the Leger case is ain your words, distinctly different case than the Adelman-Chester case or any of the other cases?
A: Yes.
Q: And in fact, you are familiar with the fact that in the state's pleading in the Adelman-Chester case the state stated with respect to the question of whether that case was related to the Leger case that each plaintiff in Adelman-Chester has undergone a different procedure with different doctors at different times, received different devices and experienced different symptoms. Do you agree that that is in fact the case that the Adelman-Chester claims are very different in very many respects from the Leger claim?
A: Yes.
Q: And further that the Leger case was filed in 1992 whereas the Adelman-Chester case was filed in 1998?
A: Yes.
Nevertheless, Director Thompson testified that the ORM defined pending claim or pending claim file as a claim or claim file that is still open for various reasons including where a claim is related to other claims that are still open. Specifically, he stated that the Leger file was "open and pending because it directly affects the other *604 Vitek cases that are still open." In addition to the 675 plaintiffs in the Adelman-Chester suit, a purported class action suit entitled James and Ett v. LSU had been filed in 2002 on behalf of an alleged class of potentially thousands.[4] When he was questioned regarding the basis for ORM's reasoning, he stated:
[W]e feel that the settlement in one case, if it becomes known, could adversely affect our ability to reach reasonable settlements in other cases based on possibly unrealistic expectation[s] and would affect us from (sic) our mission of minimizing the costs of litigation to the state.
He also supported the ORM's determination that the Leger file was still pending by asserting that much of the discovery on the Vitek cases was done under that file. Thus, pursuant to ORM's policies, the Leger file was to retain pending status until all of the 675 plaintiffs' claims in the Adelman-Chester case, as well as the potentially thousands of claims in the James and Ett class action suit, were settled, dismissed, or adjudicated by a final judgment.
At the conclusion of the hearing, the trial court, in its oral reasons for judgment, stated:
[I]t seems that the language of [La. R.S. 44:4(15) ] is clear when it talks about a pending claim file, and I think pending has a certain meaning. And we have talked about Black's Law Dictionary and we have talked aboutwas it the Segura case and some definitions and things.... [W]hile I certainly understand why it would be beneficial to the state to keep that in a pending status, that's not a pending claim. That is a final claim. It has been adjudicated. It has been resolved. It's not pending any longer.
Therefore, the trial court ruled that the documents requested by the plaintiffs were public records under the Louisiana Public Records Law and were not excluded under any legal exemption. Consequently, the court ordered the Office of Risk Management to produce copies of any check or checks together with any related documents that reflect payment made by the state to Ms. Leger. A judgment memorializing the ruling was filed on September 26, 2002.
From this judgment, plaintiffs have appealed asserting one assignment of error. Plaintiffs contend that the trial court committed reversible error by ignoring both the plain language of La. R.S. 44:4(15) and the public policy concerns evidenced by that language, and as a result, erred in requiring the ORM to divulge the pertinent documents. It is in this procedural posture that the case now comes to us for review.

STANDARD OF REVIEW
At the outset, we note that declaratory judgments may be reviewed as other orders, judgments, and decrees are. La. C.C.P. art. 1877. Hence, a court of appeal may not overturn a judgment of the trial court absent an error of law or a factual finding that is manifestly erroneous. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882, n. 2 (La.1993). In the present case, the judgment of the trial court was based on its interpretation of La. R.S. 44:4(15). It is axiomatic that the interpretation of a statute is a question of law. Clements v. Folse, XXXX-XXXX, p. 5 (La.App. 1 Cir. 8/14/02), 830 So.2d 307, 312, writ denied, *605 2002-2328 (La.11/15/02), 829 So.2d 437. When addressing a question of law, a reviewing court gives no special weight to the findings of the trial court. Instead, we are compelled to conduct a de novo review and render a judgment on the record. Campbell v. Markel American Ins. Co., XXXX-XXXX, p. 5 (La.App. 1 Cir. 9/21/01), 822 So.2d 617, 620, writ denied, 2001-2813 (La.1/4/02), 805 So.2d 204.

RELEVANT LAW
It is well-settled that the public's right of access to public records is a fundamental right guaranteed by both the Louisiana Constitution and the Public Records Law set forth in La. R.S. 44:1 et seq.
Louisiana Constitution, Article 12, § 3 mandates that "no person shall be denied the right to ... examine public documents, except in cases established by law."
With regard to this constitutional provision, the Louisiana Supreme Court, in Title Research Corp. v. Rausch, 450 So.2d 933, 936 (La.1984) held as follows:
The right of the public to have access to the public records is a fundamental right.... [La. Const. art. 12, § 3] must be construed liberally in favor of free and unrestricted access to the records, and that access can be denied only when a law, specifically and unequivocally, provides otherwise. Whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right to see. To allow otherwise would be an improper and arbitrary restriction on the public's constitutional rights.
Louisiana Revised Statute 44:31 provides:
A. Providing access to public records is a responsibility and duty of the appointive or elective office of a custodian and his employees.
B. (1) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter any person of the age of majority may inspect, copy or reproduce, or obtain a reproduction of any public record.
(2) The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian.
The Louisiana Supreme Court has held that in passing the Public Records Act the Legislature sought to guarantee, in the most expansive way possible, the right of the public to inspect and reproduce those records which the laws deem to be public. The court further found that there was no intent on the part of the legislature to qualify, in any way, the right of access. Title Research Corp. v. Rausch, 450 So.2d at 936-937. And as with the constitutional provision, the Public Records Act must be construed liberally in favor of access and any doubt must be resolved in favor of the right of access. Id. Therefore, it follows that any exemption to the Public Records Act is in derogation of the public's right to be reasonably informed and must be narrowly interpreted. Laplante v. Stewart, 470 So.2d 1018, 1021 (La.App. 1 Cir.), writ denied, 476 So.2d 352 (La.1985). Thus, the right of access can only be denied when the law, specifically and unequivocally, denies access. Local 100, Service Employees' Intern. Union v. Forrest, 95-1954, p. 4 (La.App. 1 Cir. 5/10/96), 675 So.2d 1153, 1156, writ denied, 96-1499 (La.9/20/96), 679 So.2d 441.
Furthermore, La. R.S. 44:31B(2) provides that the burden of proving that a public record is not subject to inspection, copying or reproduction shall rest with the custodian. The mere fact that the public *606 record requested may contain nonpublic material is not a valid reason for restricting access to that record. Elliott v. District Attorney of Baton Rouge, 94-1804, p. 7 (La.App. 1 Cir. 9/14/95), 664 So.2d 122, 126, writ denied, 95-2509 (La.12/15/95), 664 So.2d 440. Rather, when a record contains material which is not a public record, the custodian may separate the nonpublic record and make only the public record available for examination. La. R.S. 44:32B.

DISCUSSION
Louisiana Revised Statute 44:1A(1), in its definition of "public records," expressly includes those documents "concerning the receipt or payment of any money received or paid by or under the constitution or laws of this State." Thus, it is undisputed that the records relating to the settlement between the state and the Legers are public records to which access can be denied only if the law specifically and unequivocally provides for denial of access.
The ORM contends that the public records in the present case are exempt from disclosure pursuant to La. R.S. 44:4 which provides that the Public Records Act shall not apply:
* * * * * *
(15) To any pending claims or pending claim files in the custody or control of the office of risk management, Division of Administration, or similar records in the custody of any municipality or parish... (Emphasis added.)
On appeal, the State's ORM argues that the trial court erred in giving too narrow an interpretation to the word "pending" thus creating a redundancy in the terms "pending claim or pending claim files" and missing the "spirit" of the exception provided in La. R.S. 44:4(15). The State further argues that the consolidation of the Leger case with the Adelman-Chester case compels a finding that the Leger file be considered a "pending claim file." Louisiana Revised Statute 44:4 does not define the terms "pending claims or pending claim files." Hence, we are required to interpret the meaning of those terms.

1. Statutory Interpretation
Words and phrases are to be read with their context and construed according to the common and approved usage of the language. La. R.S. 1:3. Black's Law Dictionary defines "claim" as follows: "To demand as one's own or as one's right; ... Cause of Action.... Demand for money or property." Black's Law Dictionary, 224 (5th ed.1979). After consulting Black's Law Dictionary, the Louisiana Supreme Court, in Segura v. Frank, 93-1271, p. 19 (La.1/14/94), 630 So.2d 714, 727, cert. denied sub nom., Allstate Insurance Company v. Louisiana Insurance Guaranty Association, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994), concluded that a claim is "pending" only as long as it is subject to judicial scrutiny. Therefore, once there has been a final judgment dismissing it, a claim ceases to be pending. See Hebert v. Doctors Memorial Hospital, 486 So.2d 717, 721 (La.1986).
The ORM argues that the term "pending" should be interpreted differently in this case because it appears in a different context than that presented in the Segura case. Although, substantively, that case dealt with the applicability of the Louisiana Workers' Compensation Law, and the present case involves the Public Records Act, we likewise find that the term "pending claims," as used in La. R.S. 44:4(15), are those claims that are subject to judicial scrutiny.
In interpreting a law, we must give it the meaning intended by the legislature. *607 Intent expressed at the appropriate legislative committee meetings is an aid to the courts in determining the true legislative intent and purpose behind the law. Bridges v. Smith, 2001-2166, p. 5 (La.App. 1 Cir. 9/27/02), 832 So.2d 307, 311, writ denied, 2002-2951 (La.2/14/03), 836 So.2d 121. We have examined the audio-taped proceedings of the Committee on House and Governmental Affairs conducted on May 27, 1987. During those proceedings, Mr. Daryl Hunt, a representative of the Division of Administration, explained to the legislative committee members that two bills being introduced, including the one that would exempt "pending claims or pending claim files" at the ORM from public access, were designed to "provide the legal section at the Office of Risk Management the same rights that any lawyer building a case would have." Further, specifically referring to the bill providing the "pending claims and pending claim files" exemption, Mr. Hunt expressly stated that it was intended to exempt the "case being built" by the ORM. Such a legislative intention falls squarely within the supreme court's interpretation in Segura of what constitutes a pending claim. To exempt a "case being built" obviously would not include those cases that have been settled and dismissed with prejudice or adjudicated by a final judgment. Therefore, we conclude that the term "pending claims" referenced in La. R.S. 44:4(15), includes only those claims that are still subject to judicial scrutiny.
When the Legers settled their claims with the ORM for a specified amount, the ORM paid that amount, and the Legers released the State from further liability in writing, a compromise of the claim occurred. A compromise, under which defendants pay a certain amount and are released from further liability in writing, has the authority of a judgment between the parties. Jarreau v. Hirschey, 93-1402, p. 7 (La.App. 1 Cir. 12/7/94), 650 So.2d 1189, 1193 writ denied, 95-0766 (La.5/12/95), 654 So.2d 348. It is well settled that compromise agreements have a force equal to the authority of the thing adjudged.[5]Id. Additionally, all of the Legers' claims against all the defendants were dismissed with prejudice, hence they are no longer subject to judicial scrutiny. Therefore, it is clear that the Legers' claims were no longer "pending claims."
However, the ORM maintains that the Leger file has been designated a "pending claim file" by the ORM because the ORM's internal policy is to retain a case file, in this case the Leger file, under pending status as long as other related cases, here, the various Vitek cases, remain pending. On the basis of this policy, the ORM argues that the Leger file is exempt from the Public Records Act under the "pending claim files" language of La. R.S. 44:4(15).
Additionally, the State argues that the trial court's interpretation of "pending claim or pending claim files" rendered the terms redundant. According to the State:
The court below apparently felt no ambiguity in the meaning of "pending" as it modified both "claim" and "claim files." But, courts are directed to give full meaning to an act with the understanding that no word should be construed as unnecessary or as surplusage.... *608 As required by the statute, exempting any records pertaining to "pending claims" would likewise exempt any documents in the file pertaining to that claim during the pendency of the litigation. If the purpose of the exemption from disclosure was so limited, there would be no need to further exempt "pending claim files." Under this scenario, the phrase, "pending claim files," would be redundant when used in the conjunctive with "pending claims." (Emphasis added.)
We find appellant's argument to be unpersuasive. The express language of the statute provides an exemption for "pending claims or pending claim files," not "any records pertaining to pending claims or pending claim files." While the term "claim" has been interpreted to mean a demand or cause of action, the term "file" is defined as "a record of the court....The "file" in a cause includes the original complaint and all pleadings and papers belonging thereto." Black's Law Dictionary 566 (5th ed.1979). Accordingly, the term "pending claim files" is broader than the term "pending claims." Consequently, by their very definitions, the terms are not redundant. Moreover, the statute does not join the terms conjunctively as the word "or" is utilized. See La. R.S. 1:9. The word "or" is a "disjunctive particle used to express an alternative or to give a choice of among two or more things." Black's Law Dictionary 987 (5th ed.1979). Here, there is an alternative of the narrower "pending claims" or the broader "pending claim files."
Therefore, mindful that the relevant statutory provisions are to be interpreted liberally in favor of providing public access, while exceptions to that access are to be narrowly construed, we see no legal error in the trial court's interpretation of La. R.S. 44:4(15). We find that the term "pending claim files" could, and should, reasonably be interpreted to include only those distinct files pertaining to a still pending claim. Therefore, the file entitled "Leger v. Kent, ORM File # 93X/0824LEGER" would not be considered a "pending claim file" because that claim had been settled and the suit dismissed with prejudice.
Apparently, the State does not dispute this interpretation because nowhere in its brief to this court does the State ever assert that the Leger file actually is a "pending claim file." Rather, the State argues that the gravamen of this is appeal is the authority of the ORM "to designate a file within its office [as] a "pending claim file" ... and thereby protect the file from required disclosure under [the Public Records Act]." The State urges that we find in favor of the ORM's right to protect public records from disclosure by "labeling" a matter a "pending claim file" because to do otherwise, the State claims, would prejudice the ORM in the further handling of related matters.

2. The Spirit of the Exception
Essentially, the State argues that we find that the "spirit" underpinning the "pending claims or pending claim files" exception compels us to interpret the term "pending claim files" more broadly to include those claim files "designated" or "labeled" pending by the ORM. However, allowing the ORM to escape disclosure by designating or labeling a claim file pending, even though the claim is no longer subject to judicial scrutiny, would defeat the very purpose of the Public Records Act.
The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on any provision *609 in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Ransome v. Ransome, 2001-2361, p. 6 (La.App. 1 Cir. 6/21/02), 822 So.2d 746, 752. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. Id. As previously noted, the Louisiana Supreme Court has held that in passing the Public Records Act the legislature sought to guarantee, in the most expansive way possible, the right of the public to inspect those records which the laws deem to be public and that there was no intent on the part of the legislature to qualify, in any way, the right of access. Title Research Corp. v. Rausch, 450 So.2d at 936-937; Capital City Press v. East Baton Rouge Parish Metropolitan Council, 96-1979, p. 4 (La.7/1/97), 696 So.2d 562, 564.
Like the trial court in this case, we understand why it would be beneficial for the State to keep this information confidential. But while we recognize that the information in this case may potentially hamper the ORM from reaching settlements in related cases, such a potentiality cannot negate the public's fundamental right of access. In the case of the Public Records Act we are instructed to find in favor of disclosure whenever there is any doubt as to the interpretation of a statute. Indeed, in order for an exception to the Public Records Act to be invoked, a law must specifically and unequivocally provide for that exception. Should the legislature intend for the ORM to have greater discretion in "designating" or "labeling" a file as pending or in protecting documents in situations factually similar to the one at hand, then the legislature must specifically so provide.

3. Consolidation
Nevertheless, the State contends that the fact the Leger case was consolidated with the Adelman-Chester case supports a determination that the Leger file continues to be a pending claim file because the Adelman-Chester case is still pending. The State urges that being required to provide access to the Leger file would prejudice the State in the Adelman-Chester case, as well as the potential class action suit, by revealing the State's legal strategies and defenses. Based on the facts in this case, we must respectfully disagree.
Firstly, the Leger case was consolidated with the Adelman-Chester case for discovery purposes only. Nevertheless, they were separate cases filed at different times and involved different claims in many respects. The Legers settled their claims and released the State from future liability while the Adelman-Chester case continues. Moreover, both cases have been maintained at the ORM in separate files with different file numbers. Secondly, we note that The Times-Picayune only requested a "copy of the check or checks, or any related documents that reflect payment made" by the State to the Legers. Even Director Thompson testified that he did not believe that a copy of the requested check would reveal the legal strategies or defenses to be asserted by the State in future litigation. Finally, the fact that public material requested may contain nonpublic records is not a valid reason for restricting access to that material. Elliott v. District Attorney of Baton Rouge, 94-1804 at p. 7, 664 So.2d at 126. According to La. R.S. 44:32, the public and the nonpublic material could be separated and access granted only to the public records. Therefore, should the non-pending Leger file contain any documents specifically regarding any of the separate but related, pending cases, *610 then the ORM could separate and remove that material from the Leger file while still allowing access to the public records contained therein. Even so, we note that The Times-Picayune's request does not encompass any nonpublic materials. The Times-Picayune has only requested a copy of the check or checks or any related documents that reflect the amount the State paid the Legers to settle their suit. The requested documents are public records that are not specifically and unequivocally exempt under any law, therefore disclosure is mandated.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court finding that the requested documents were public records and were not exempt under any law, and further ordering their disclosure by the Division of Administration, Office of Risk Management. Appellants, The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, Dr. William L. Jenkins as President of the Louisiana State University System and Secretary of the Board of Supervisors, the State of Louisiana through the Division of Administration and William J. Kling, Jr., Acting State Risk Director and Deputy Undersecretary of the Division of Administration, are cast with the costs of this appeal in the amount of $554.88.
AFFIRMED.
NOTES
[1] Hon. William F. Kline Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The record indicates that Julian S. Thompson, Jr. was appointed Director of the Office of Risk Management on May 14, 2002.
[3] The Times-Picayune alternatively prayed that a mandatory injunction be issued requiring the Office of Risk Management to produce the requested information.
[4] At the time of trial, no class certification hearing had been held in the James and Ett case.
[5] La. C.C. art. 3506(31) was repealed by Acts 1999, No. 503, § 1. It read as follows:

31. Thing Adjudged.Thing adjudged is said of that which has been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been confirmed on the appeal.